ZECCHIN v ZECCHIN

Docket No. 78862. Submitted December 3, 1985, at Detroit.—Decided March 17, 1986.

Plaintiff, Ronald L. Zecchin, and defendant, Nancy A. Zecchin, were divorced pursuant to a judgment of divorce entered in the Wayne Circuit Court, George T. Martin, J. Defendant appeals, contesting the property settlement and alimony award entered by the trial court. *Held:*

1. The division of the marital assets is affirmed. The award of alimony is reversed and remanded to the trial court for the recalculation of that award pursuant to the Court of Appeals opinion. In making such recalculation, the trial court may not consider fault as a factor and should take into account the fact that defendant wife, by mutual agreement, effectively removed herself from the job market for 27 years and currently has few marketable skills. The trial court, in making the redetermination of alimony, should not place the defendant wife in a position of having to dissipate all or most of her property award in order to finance her reeducation nor should plaintiff husband be required to dissipate his assets in order to help finance the wife's reentry into the work force.

2. The trial court's finding that defendant had ordered plaintiff to leave the marital home cannot support a finding that defendant was at fault for the breakup of the marriage.

3. The trial court did not abuse its discretion in excluding evidence of the plaintiff's extramarital affair.

4. The trial court's valuation of the marital property was not clearly erroneous.

5. The trial court's finding that defendant made unwarranted purchases using plaintiff's Visa card during a one-month period

REFERENCES

Am Jur 2d, Divorce and Separation §§ 2, 280, 296, 328, 368, 369, 523, 586, 640, 641, 864-962.

Fault as consideration in alimony, spousal support or property division awards pursuant to no-fault divorce. 86 ALR3d 1116.

See also the annotations in the ALR3d/4th Quick Index under Divorce and Separation.

following the parties' separation is amply supported by the record and is not clearly erroneous.

6. The trial court did not err in determining that defendant's expert was not credible in regard to the value of plaintiff's pension and in accepting the value figure suggested by plaintiff's attorney, based on plaintiff's expert's testimony. Defendant had the burden of proving the present value of the pension, which she failed to do. The figure arrived at by the trial court is based on the record and is not clearly erroneous.

7. The trial court did not abuse its discretion in regard to its award of attorney fees to defendant.

8. The trial court should modify the alimony award to allow the court to reconsider after the two-year rehabilitation period whether future alimony is necessary. At that time, the trial court can issue a final order either terminating all alimony, extending it or reserving alimony for future determination.

Affirmed in part, reversed in part and remanded.

1. DIVORCE — DIVISION OF MARITAL PROPERTY — FAULT.

Fault is still a valid consideration in the division of marital property, notwithstanding Michigan's no-fault divorce law; a trial court's finding that the defendant wife was at fault for the breakup of the marriage based on its finding that the defendant wife had ordered the plaintiff husband to leave the marital home cannot support a finding of fault; the focus must be on the conduct of the parties leading to the separation rather than on who left whom.

2. EVIDENCE — RELEVANT EVIDENCE.

A trial court has broad discretion in regard to the determination of the relevancy of evidence sought to be admitted.

3. DIVORCE — MISCONDUCT OF PARTY — ASSESSMENT OF FAULT.

The misconduct of a party may be a relevant factor in assessing fault in a divorce action.

4. APPEAL — DIVORCE — MARITAL ASSETS.

The Court of Appeals will not disturb a trial court's valuation of marital property unless such valuation is clearly erroneous.

5. DIVORCE — MARITAL ASSETS — PENSION PLANS — BURDEN OF PROOF.

The party seeking to have the opposing party's pension treated as a marital asset bears the burden of proving the present value of the pension.

6. DIVORCE — ATTORNEY FEES — COURT RULES.

Attorney fees are not awarded in an action for a divorce as a

matter of right, but only as necessary to enable a party to carry on or defend the litigation; the trial court has the discretionary authority to award an amount which is necessary and reasonable after determining that a party requires an award of attorney fees to carry on the litigation (MCR 3.206[A][3]).

7. DIVORCE — ALIMONY — APPEAL.

An award of alimony is discretionary with the trial court and the Court of Appeals will not modify an alimony award unless it is convinced that, sitting in the trial court's position, it would have reached a different result.

8. DIVORCE — ALIMONY.

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the ability of the parties to work; (4) the source of and amount of property awarded to the parties; (5) the age of the parties; (6) the ability of the parties to pay alimony; (7) the present situation of the parties; (8) the needs of the parties; (9) the health of the parties; (10) the prior standard of living of the parties and whether either is responsible for the support of others; and (11) general principles of equity.

9. DIVORCE — ALIMONY — APPEAL — MODIFICATION OF ALIMONY.

An award of alimony to a defendant may be modified to reserve the possibility of the payment of future alimony by the plaintiff where the evidence shows that the defendant, in spite of her best efforts, may be unable to fully support herself at the end of the original two-year rehabilitation period during which the alimony award is to be paid because of her age and relative lack of marketable skills.

*John R. Hayes,* and *Perlman, Garber, Holtz & Cash, P.C.* (by *Judith A. Holtz* and *Arnold P. Garber),* of counsel, for plaintiff.

*Williams, Schaefer, Ruby & Williams* (by *James P. Cunningham),* for defendant.

Before: MACKENZIE, P.J., and D. F. WALSH and SHEPHERD, JJ.

SHEPHERD, J. This case primarily addresses the

issue of how a former wife is to be reintegrated into the work force following a long-term marriage without being required to dissipate all of her assets during her period of rehabilitation.

The parties were divorced by a judgment entered May 23, 1984. Defendant, Nancy Zecchin, appeals as of right from that judgment, contesting the property settlement and alimony award. We affirm the division of marital assets but reverse the alimony award and remand to the trial court for the recalculation of that award in order to take into account, under appropriate standards, the fact that defendant wife, by mutual agreement with her husband, effectively removed herself from the job market for 27 years and currently has few marketable skills. We hold that in making the redetermination of alimony the trial court should not place defendant wife in a position of having to dissipate all or most of her property award in order to finance her reeducation, nor should plaintiff husband be required to dissipate his assets in order to help finance the wife's reentry into the work force.

## FACTS

The parties were married on July 13, 1957. They had two children, both of whom were adults at the time of the divorce. The parties separated on October 1, 1982. At the time of trial, plaintiff was 47 years old and employed as a supervisor for Ford Motor Company. In 1983, his income was $43,500. He had worked for Ford for 22 years and had both a contributory and noncontributory pension plan through his employer. Defendant was 50 or 51 years old at the time of the divorce and was employed as a part-time bookkeeper. She earned $5,000 in 1983. Although defendant worked in a

number of part-time jobs during the marriage, her primary responsibility was to care for the children and home. Defendant testified at trial that she would be unable to secure a full-time job as a bookkeeper because she lacked the necessary computer skills.

The trial court awarded each party property with a value of $29,047, which essentially was a division of the stock, pension, value of the home, and the equity in an automobile. In addition, defendant was awarded the parties' furniture, furnishings and appliances. Plaintiff was ordered to pay $5,630 due on his Visa account, except for $1,390, which represents one-half of an amount defendant spent on the account in a short time soon after the parties' separation. In addition, plaintiff was ordered to pay $1,000 to defendant's attorney and alimony at a rate of $150 per month for two years from the date of judgment.

## FINDINGS OF FACT

The defendant first contends that the trial court erred in: (1) finding that defendant, rather than plaintiff, was at fault in the breakdown of the marriage, (2) excluding testimony of the plaintiff's misconduct prior to the parties' reconciliation, (3) determining that the plaintiff's pick-up truck was worth only $7,000, and (4) concluding that the defendant made $2,779 of unwarranted purchases on the plaintiff's charge card after the parties separated. Only defendant's first contention has merit.

Notwithstanding Michigan's no-fault divorce law, fault is still a consideration in the division of marital property. *Davey v Davey,* 106 Mich App 579, 581; 308 NW2d 468 (1981). At trial, each party attributed the breakdown in the marriage to

the other. Plaintiff testified that their marriage was unstable for several years prior to their separation due to arguments about finances and housekeeping. He also testified that defendant ordered him to leave the marital home. Defendant, on the other hand, testified that plaintiff was an alcoholic and frequently beat her. Plaintiff denied both accusations. The trial court found plaintiff's testimony to be more credible than defendant's and further found, without elaboration, that defendant was at fault.

The trial court's conclusion that defendant was at fault was apparently based on its finding that defendant had ordered plaintiff to leave the marital home. We cannot agree that this finding can support a finding of fault. The focus must be on the conduct of the parties leading to the separation rather than on who left whom. It is clear from the record that the breakdown had already occurred prior to the time that defendant told plaintiff to leave. Plaintiff's own testimony established that the parties' marriage had been faltering for several years and that there had been an earlier separation. Moreover, plaintiff voluntarily left the home at defendant's request. He could have remained, even though ordered to leave. If we disregard defendant's testimony about plaintiff's alleged alcoholism and abuse, which the trial court found not credible, the record does not support a finding that either party was more at fault than the other in the breakdown of the marriage. It appears that they simply could not get along.

Although the trial court stated that defendant was at fault in the breakdown of the marriage, it nevertheless awarded her slightly more than half the marital property. Apparently the court either did not consider fault to be a significant factor in the property division or did not view the fault as

egregious. While we conclude that the even property division was fair and equitable notwithstanding the court's finding of fault, *Hatcher v Hatcher,* 129 Mich App 753, 767; 343 NW2d 498 (1983), on remand, the trial court may not consider fault to be a factor when recalculating the alimony award (discussed below).

The remaining instances of alleged erroneous factual findings merit only brief discussion. Defendant argues that the trial court erroneously excluded evidence of an extramarital affair which apparently occurred during the first separation or which defendant learned of during the separation. A trial court has broad discretion in making a relevancy determination. *Citizens National Bank of Cheboygan v Mayes,* 133 Mich App 808, 811; 350 NW2d 809 (1984). While the misconduct of a party may be relevant in assessing fault, the facts of this case do not suggest that plaintiff's admission of unfaithfulness, prior to the parties' reconciliation, was the cause of the couple's marital difficulties. Further, the trial judge gave defendant's counsel ample opportunity to establish a connection between plaintiff's alleged admission and the parties' breakup. The failure of counsel to present either an argument or evidence on this point militates against a finding that the trial court abused its discretion in excluding the evidence.

Defendant also argues that the trial court erred in valuing plaintiff's 1983 Ford pick-up truck at $7,000 based on plaintiff's testimony. The defendant has not made a showing that the value accorded by the trial court was clearly erroneous. Nor did she present any evidence at the trial as to the value of the pick-up truck. We will not disturb a trial court's valuation of marital property on appeal unless it is clearly erroneous. *Keen v Keen,* 145 Mich App 824, 831; 378 NW2d 612 (1985).

Finally, the trial court's finding that defendant made many unwarranted purchases using plaintiff's Visa card during a one-month period following the parties' separation is amply supported by the record and is not clearly erroneous.

## VALUATION OF PENSION

Defendant next argues that the trial court erred in rejecting the testimony of defendant's expert witness regarding the value of the plaintiff's pension and accepting the value suggested by plaintiff's attorney during closing argument.

Defendant's expert testified that, using the method of valuation set forth in *Boyd v Boyd,* 116 Mich App 774, 779-780; 323 NW2d 553 (1982), the present value of plaintiff's pension, including both the contributory and noncontributory portions, was $30,673. He further testified that, using another method of valuation which he felt was the better method, the value of the pension after taxes was approximately $27,000.

In *Boyd,* a panel of this Court determined that the value of a pension plan could be ascertained by: (1) calculating the life expectancy of the holder at retirement age; (2) multiplying the life expectancy by the yearly benefits provided by the plan; (3) calculating the probability that the holder would reach retirement age, reducing the figure in No. 2 by that amount; and (4) reducing this figure to present value. Although the defendant's expert purportedly used the *Boyd* method, he was unable to support the total reached under *Boyd* and the record is unclear as to how he arrived at either of his valuations. He admitted that he had only read a portion of the *Boyd* opinion and stated that he assumed that *Boyd* required the use of five percent interest in ascertaining the pension's value. How-

ever, *Boyd* used five percent only as an example to illustrate that it was necessary to determine the probability that the pension holder would reach retirement age. *Boyd, supra,* p 779.

Plaintiff's expert did not purport to follow the *Boyd* method. He testified that the reasonably ascertainable present value of the noncontributory portion of plaintiff's pension was $5,984.84 and that the immediately withdrawable contributory portion of plaintiff's pension had a present value of $7,370. According to a Ford Motor Company statement, plaintiff would receive $407.70 per month when he reached age 65, based upon the noncontributory portion of its pension plan alone. Plaintiff's expert then determined: (1) how much cash would be needed when plaintiff became 65 in order to allow him to make withdrawals of $407.70 until he was 74.9 years of age, the expert's calculation of the life expectancy of a 47-year-old male; and (2) how much cash would have to be set aside today at 9.5% interest to provide that money in the year 2001, when plaintiff will become 65. His answer was $5,984.84.

Plaintiff's expert further testified that if plaintiff left the contributory portion of the pension in the plan until he reached age 65 he would receive $632.50 per month. Plaintiff's expert calculated the present value of that plan as $9,152.

The trial court, finding neither expert entirely credible, determined that the value of both portions of the pension together was $13,355, the amount stated by plaintiff's attorney during closing argument. That figure is based upon the addition of the undisputed immediately withdrawable value of the contributory portion of the pension, $7,370, and the plaintiff's expert's valuation of the noncontributory portion of the pension, $5,985, which equals $13,355.

The figure arrived at by the trial court is based on the record and is not clearly erroneous. Defendant had the burden of proving the present value of the pension which she failed to do. The trial court did not err in determining that defendant's expert was not credible and in accepting the figure suggested by plaintiff's attorney, based on plaintiff's expert's testimony.

## ATTORNEY FEES

Defendant next contends that the trial court abused its discretion in awarding her attorney fees of only $1,000. She argues that the court should have ordered plaintiff to pay her entire attorney fee bill of $4,000. The record shows that defendant had already paid $2,500 of this bill. In our view, the trial court did not abuse its discretion in awarding the attorney fees it did. Attorney fees are not awarded as a matter of right, but only as necessary to enable a party to carry on or defend the litigation. *Arnholt v Arnholt,* 129 Mich App 810, 818; 343 NW2d 214 (1983). After determining that a party requires an award of attorney fees to carry on the litigation, the trial court has the discretionary authority to award an amount which is "necessary and reasonable". MCR 3.206(A)(3). Since defendant had already paid $2,500 of the $4,000 total, the trial court's award leaves her with only an additional $500 to cover from her own resources.

## ALIMONY

Defendant next argues that the trial court's alimony award of only $150 per month for two years after a 27-year marriage is an abuse of discretion. The court explained that she would

have the proceeds from the sale of the house (estimated at $16,500 for her half) for much of the two-year period and by that time she should be adjusted and have the computer training she thought would be helpful in her bookkeeping work.

An award of alimony is discretionary with the trial court and this Court will not modify an alimony award unless it is convinced that, sitting in the trial court's position, it would have reached a different result. *Hatcher, supra,* p 760. The following factors should be considered in determining whether alimony should be awarded:

"(1) the past relations and conduct of the parties;

"(2) the length of the marriage;

"(3) the parties' ability to work;

"(4) the source of an amount of property awarded to the parties;

"(5) the age of the parties;

"(6) the parties' ability to pay alimony;

"(7) the present situation of the parties;

"(8) the needs of the parties;

"(9) the health of the parties;

"(10) the parties's prior standard of living and whether either is responsible for the support of others; and

"(11) general principles of equity." *Hatcher, supra,* p 760.

While we agree with the trial court that the two-year period *may* be sufficient to rehabilitate defendant by allowing her to get the computer training she feels is necessary to secure a full-time bookkeeping position and allowing her time to reenter the work force, we cannot agree that $150 per month provides the necessary support during this rehabilitation period. We have considered a number of factors in reaching this decision.

First, with the exception of a number of part-time jobs, defendant took herself out of the work force during this 27-year marriage in order to care for the parties' children and home. Plaintiff's own testimony at trial established that "it was a mutual agreement that [he] take care of the bills". By mutual agreement the parties entered into a traditional marriage in which defendant assumed the primarily noneconomic role of mother and homemaker.

Second, we note the great economic disparity in the parties' positions under the divorce judgment. Because defendant's role in the marriage was primarily that of mother and homemaker, she now finds herself after the divorce without the skills, earning capacity or job security which plaintiff now enjoys. Plaintiff not only earns far more than defendant but also has the benefit of a noncontributory pension plan and 22 years of job seniority. In comparison, defendant has no career and has held only part-time jobs during the marriage. The economic reality which cannot be ignored is that it is highly unlikely that she ever will have near the earning capacity that plaintiff has even if she gets the computer training she feels she needs.

Third, the trial court's opinion anticipates that defendant will have to dissipate her half of the parties' assets acquired during the 27-year marriage simply to survive while she gets the necessary training which she herself will have to finance. Plaintiff, on the other hand, should be able to live comfortably on his salary without ever having to spend his half of the marital assets.

We conclude that the amount awarded has to take into account the fact that for 27 years defendant was for the most part out of the work force in order to care for the home and children. She should not have to dissipate her marital assets and

become impoverished during the two-year rehabilitation period. Plaintiff must, if possible, provide sufficient support during this two-year period to allow defendant to get the necessary training and to reenter the work force without having to expend marital assets. See, also, the language of Judge BRONSON in *Boyd, supra,* p 788, and the concurring opinion of Judge (now Justice) M. F. CAVANAGH, p 789.

Accordingly, we direct the trial court on remand to redetermine the alimony award by first calculating the amount reasonably necessary for defendant's support and education during the two-year period. In making this calculation, the trial court should take into account the income defendant can earn from wages and interest on marital assets. The trial court should then calculate the amount that plaintiff can reasonably be expected to pay during this period. Our review of the record leads us to the conclusion that $150 per month is too low, both as to the amount necessary for the wife's support and the amount the husband can reasonably afford to pay.

Just as we have said that the defendant should not be required to dissipate her marital assets during the period of rehabilitation, we also conclude that in determining plaintiff's ability to pay alimony the trial court should calculate the income that the plaintiff can earn on his assets but need not require plaintiff to invade the corpus of those assets for defendant's support. We do not wish to imply that all of defendant's needs must be met by plaintiff. We merely hold that an attempt must be made to balance the incomes, needs and abilities of each party under the criteria stated herein in a manner that will not improverish either party in the process.

We further direct the trial court to reconsider,

after the two-year period, whether future alimony is necessary. We are unable to determine at this time whether defendant, in spite of her best efforts, will be able to fully support herself at the end of the two-year period because of her age and relative lack of marketable skills. See *Boyd, supra,* where on similar facts the trial court's decision granting alimony for two years was modified to allow the possibility of future alimony in the event that the defendant was unable to support herself due to her health problems, age, and lack of marketable skills. We believe, as did the panel in *Boyd,* that the possibility of future payments should not be foreclosed at this time. The issue of whether alimony should be extended beyond the two-year period is best left to the determination of the trial court after that period has run. At that time the trial court can issue a final order either terminating all alimony, extending it or reserving alimony for future determination.

Affirmed in part, reversed in part and remanded for proceedings in accordance with this opinion.