KURZ v KURZ

Docket No. 92993. Submitted June 8, 1988, at Grand Rapids. Decided March 22, 1989.

Plaintiff, Karl T. Kurz, and defendant, Marjorie Kurz, were married on August 2, 1958. By the mid-1970s the marriage had begun to deteriorate. Plaintiff filed a complaint for divorce in the Cheboygan Circuit Court on August 20, 1981. Following trial, the court, Harold A. Johnson, Jr., J., issued an opinion which granted defendant alimony, a substantial portion of the marital property, and a fifty percent interest in plaintiff's two pensions, with distribution being deferred until plaintiff's retirement. The value of the pensions was to be determined at the time of retirement. Defendant was granted $350 per week alimony until plaintiff retired, either party died, or defendant remarried, and plaintiff was directed to pay defendant's attorney fees and to reimburse her for certain costs incurred during litigation. Plaintiff appealed. Before the appeal was heard, plaintiff retired early and, therefore, was relieved of the obligation to pay further alimony. Defendant petitioned the Court of Appeals requesting that plaintiff be ordered to continue paying $350 per week alimony pending the outcome of the appeal. The Court of Appeals remanded the matter to the trial court for a redetermination of the entire alimony issue. The trial court on remand ruled that plaintiff's early retirement constituted a change in circumstances warranting amendment of the divorce judgment. The court stated that its decision regarding alimony and pension distribution was based on the assumption that plaintiff would continue his employment with General Motors until age sixty-five. The court then ruled that defendant is entitled to alimony in the amount of $250 per week until plaintiff reaches age sixty-five or dies, or until defendant remarries or dies. The provision awarding defendant fifty percent of the pension benefits remained unchanged. Plaintiff raised sev-

REFERENCES

Am Jur 2d, Appeal and Error §§ 134-138; Divorce and Separation §§ 565-571, 589 et seq., 639-647, 758, 905 et seq., 915 et seq.

See the Index to Annotations under Alimony; Appeal and Error; Attorneys' Fees; Divorce and Separation; Life Insurance.

eral issues on appeal concerning alimony, property distribution, pension division, and award of attorney fees and costs.

The Court of Appeals *held:*

1. The trial court erred in awarding defendant a straight fifty percent of the pension payments actually received by plaintiff. The court should not have awarded defendant any portion of the pensions which accrued during the two-year period plaintiff worked for General Motors prior to the marriage or during the period he worked subsequent to the entry of the divorce judgment. The pensions should have been evaluated using plaintiff's accrued benefit and salary level on the date of the original divorce judgment, excluding any value which accrued outside the marriage, and defendant awarded a fifty percent share of that amount only. The matter is remanded to the trial court for a redetermination of defendant's share of the pension amounts received by plaintiff. In making the redetermination, the court should employ either the life-annuity method or the life-expectancy method, taking into account the pension values which accrued prior to the marriage and that which accrued after the termination of the marriage.

2. The trial court's division of the marital property was equitable. When considered in light of plaintiff's salary and the life-style to which the parties had become accustomed, the value of the share of marital property awarded to defendant was relatively insubstantial.

3. The trial court did not abuse its discretion in awarding defendant alimony in the amount of $250 per week until plaintiff reaches age sixty-five or dies or until defendant remarries or dies.

4. The trial court did not abuse its discretion or exceed its authority on remand in awarding defendant alimony beyond completion of the appeal.

5. The trial court abused its discretion in requiring plaintiff to maintain a life insurance policy naming defendant as sole beneficiary so as to secure her right to alimony. That particular requirement of the divorce judgment is vacated.

6. The trial court did not abuse its discretion in ordering plaintiff to pay defendant's attorney fees and costs.

Affirmed in part, reversed in part, and remanded for a redetermination of defendant's share of plaintiff's pension.

MURPHY, J., dissented as to the majority's decision to reverse the provision of the divorce judgment regarding the division of plaintiff's pension. He would hold that the pension benefits of a party are an asset which are to be considered part of the marital estate, treated like any other asset of the marital

estate, and subject to evaluation and distribution in the discretion of the court.

1. Divorce — Marital Estate — Valuation of Pensions.

A pension considered part of the marital estate subject to award by the court in a divorce action should be evaluated by using the pensioner's accrued benefit and salary level on the date of the original divorce judgment, excluding any value which accrued before the marriage or after entry of the divorce judgment (MCL 552.18[1]; MSA 25.98[1]).

2. Divorce — Property Division.

A trial court has great discretion in the adjustment of property rights upon divorce; the objective in arriving at a property settlement is to attain a division which is fair and equitable in light of all the circumstances; in making a division of property, the trial court must examine the duration of the marriage, contributions of the parties to the joint estate, the parties' station in life and earning abilities, fault or past misconduct, and other equitable circumstances.

3. Divorce — Alimony — Appeal.

The grant or denial of alimony lies within the sound discretion of the trial court; the Court of Appeals will not modify an award of alimony unless it is convinced that, sitting in the position of the trial court, it would have reached a different result.

4. Divorce — Alimony — Fault.

A trial court in computing an award of alimony must consider the following factors: (1) the duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the ages of the parties, (4) their health, (5) their station in life, (6) the necessities and circumstances of the parties, and (7) the earning abilities of the parties; in addition, a party's fault in causing the divorce is a valid consideration in dividing the marital assets or awarding alimony.

5. Divorce — Alimony — Life Insurance.

One party in a divorce action cannot be required to maintain a life insurance policy naming the other party as sole beneficiary so as to secure that party's right to alimony where, under the terms of the divorce judgment, the obligation to pay alimony ceases upon the occasion of the payor's death and the payee was not awarded a lump sum alimony award which the payor was obligated to pay, even posthumously.

6. Divorce — Costs — Attorney Fees.

Attorney fees and costs incurred by a party in a divorce action

are not recoverable as a matter of right, but are to be awarded, in the discretion of the court, only where necessary to preserve the party's ability to carry on or defend the action (MCL 552.13; MSA 25.93; MCR 3.206).

*Simpson & Moran, P.C.* (by *Kathleen A. Lieder*), for plaintiff.

*Lowell Blumberg,* for defendant.

Before: MAHER, P.J., and MURPHY and R. B. BURNS,* JJ.

PER CURIAM. Plaintiff appeals as of right from those portions of the parties' divorce judgment which concerned property distribution, pension benefits, alimony, and attorney fees awarded to defendant. We affirm in part and reverse in part.

The parties were married on August 2, 1958. At the time, plaintiff was almost twenty-three years old and had just completed the four-year cooperative program at General Motors Institute. He had begun working full time for General Motors Corporation approximately six months before. Defendant was twenty years old and a student, majoring in education and sociology, at the University of Michigan-Flint. After the marriage, defendant discontinued her schooling and went to work as a receptionist and dental assistant to support the parties until plaintiff graduated.

In 1960, the parties moved to Birmingham, Michigan, and started a family. A son, Scott, was born in November of 1960 and a daughter, Kristen, was born in November of 1963. After the birth of Scott, defendant went back to college part time but was unable to continue due to the difficulty in commuting and caring for the family.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

In the mid-1960s, plaintiff was offered a position with General Motors' foreign division. Plaintiff and defendant mutually decided he should accept the position, as it presented a unique opportunity for the entire family. In the years that followed, plaintiff's employment required the family to live in numerous countries, including Great Britain, West Germany, Brazil, Venezuela, and Argentina. During this time, the family resided in hotels or rented homes and enjoyed an affluent life-style.

By March of 1974, plaintiff had been promoted to chief engineer of products engineering for a wholly owned subsidiary of General Motors located in Mexico City, Mexico. The family lived in a three-story, five-bedroom home with a swimming pool. They had a country club membership and were provided live-in domestic help. Around the same time, the family began spending part or all of their summers in Michigan, having purchased a lakefront cottage in Cheboygan County in 1972.

In the mid-1970s, as Scott and Kristen neared adulthood, plaintiff's and defendant's interests apparently began to diverge. Consequently, their relationship deteriorated. In March of 1981, plaintiff told defendant he thought their marriage was over and that he would be seeking a divorce. Plaintiff filed his complaint for divorce with the Cheboygan Circuit Court on August 20, 1981.

Defendant filed a countercomplaint for divorce. She later made several motions, including one to adjourn the scheduled trial date. The trial court stated that it would deny the motion unless defendant agreed to forego temporary alimony during the period of adjournment. Defendant refused. On July 27, 1982, the court rejected an ex parte motion from defendant to reconsider its denial of an adjournment.

Trial commenced on July 29, 1982. Neither de-

fendant nor her attorney appeared for trial. Plaintiff did attend, however, and presented evidence concerning the parties' relationship and property. The court granted the divorce. In a subsequent opinion and order, plaintiff was awarded exclusive rights in his two employment pensions. Defendant received an alimony award and a substantial portion of the marital property.

In November of 1982, defendant claimed an appeal from entry of the divorce judgment. This Court in an unpublished opinion per curiam affirmed the judgment of divorce and the division of the marital property. However, it held that the trial court had abused its discretion by not considering alternate sanctions short of requiring defendant to forego temporary alimony to obtain an adjournment of the scheduled trial date. Hence, the trial court's ruling as to the alimony award was reversed and remanded for reconsideration. *Kurz v Kurz*, unpublished opinion per curiam of the Court of Appeals, decided April 3, 1984 (Docket No. 60948). Defendant appealed that decision to our Supreme Court which, in lieu of granting leave to appeal, summarily reversed that part of this Court's opinion affirming the division of marital property. The Supreme Court held that the questions of alimony and property division should be considered together and, therefore, remanded the case for a new trial. *Kurz v Kurz*, 422 Mich 882 (1985).

While the Supreme Court appeal was pending, the trial court ordered that temporary alimony in the amount of $375 per week should be reinstated to defendant. The trial court later reduced that amount to $261 per week.

On December 19, 1984, defendant's motion to disqualify the original trial judge was granted and a new judge was appointed to preside.

On October 31 and November 1, 1985, a second trial was conducted, focusing on the issues of alimony and property division. On January 29, 1986, the court issued a written opinion which divided the marital property in substantially the same manner as the original property division. As to plaintiff's pensions, though, defendant was granted a fifty percent interest therein. Distribution of the pensions was deferred until plaintiff's retirement. The value of the pensions was to be determined at that time. Regarding alimony, defendant was awarded $350 per week until either party died or until defendant remarried. A second opinion, which addressed objections to the proposed judgment, was entered on April 2, 1986. A final judgment incorporating the two opinions was entered on May 22, 1986. In the judgment, plaintiff was directed to pay defendant's attorney fees and to reimburse her for certain costs incurred during litigation. On June 3, 1986, plaintiff claimed an appeal from the final judgement of divorce and the order taxing costs to him.

On March 1, 1987, plaintiff retired early (the parties dispute whether this was voluntary or not) and, therefore, according to the terms of the divorce judgment, was relieved of the obligation to pay further alimony. Defendant then petitioned this Court, requesting that plaintiff be ordered to continue paying $350 a week as alimony pending the outcome of this appeal. This Court remanded the matter to the trial court for a redetermination of the whole alimony issue.

A hearing on the matter was held on September 16, 1987. The trial court ruled that plaintiff's early retirement constituted a change in circumstances warranting amendment of the divorce judgment. The court explained that its decision regarding alimony and pension distribution was based on the

assumption that plaintiff would continue his employment with General Motors until age sixty-five. In keeping with its original intent, the court ruled that defendant is entitled to alimony in the amount of $250 per week until plaintiff reaches age sixty-five or dies, or until defendant remarries or dies. The provision in the divorce judgment awarding defendant fifty percent of the pension benefits remained unchanged.

The case is now before this Court for a decision. Plaintiff raises several issues on appeal concerning alimony, property distribution, pension division, and award of attorney fees and costs.

I

Plaintiff first argues on appeal that the trial court abused its discretion in awarding defendant fifty percent of his pensions, as valued at the time of his actual retirement (i.e., March 1, 1987). Although we reject certain valuation figures submitted by plaintiff, we do agree that the trial court should have valued the pensions using plaintiff's accrued benefit and salary level on the date of the original divorce judgment,[1] excluding any value which accrued outside the marriage, and awarded defendant a fifty percent share of that amount only.

MCL 552.18(1); MSA 25.98(1) provides:

Any rights in and to vested pension, annuity, or

---

[1] Plaintiff urges this Court to calculate the pensions' values as of the date the divorce complaint was filed or, alternatively, the date the court orally granted the divorce from the bench. We decline to adopt either of those dates because the marriage was not officially terminated until entry of the divorce judgment on October 12, 1982. A divorce judgment is not effective until it is reduced to writing and signed by the court. Until this was done, the parties remained married. *Tiedman v Tiedman,* 400 Mich 571, 576; 255 NW2d 632 (1977).

retirement benefits, or accumulated contributions in any pension, annuity, or retirement system, payable to or on behalf of a party *on account of service credit accrued by the party during marriage* shall be considered part of the marital estate subject to award by the court under this chapter. [Emphasis added.]

A necessary corollary of the emphasized language of the above statute is that that portion of a pension attributable to service credit accrued prior to the marriage or after the divorce cannot be considered part of the marital estate subject to award by the court. *Kilbride v Kilbride,* 172 Mich App 421, 435; 432 NW2d 342 (1988).

The trial court in the instant case erred by awarding defendant a straight fifty percent of the pension payments actually received by plaintiff. The court should not have awarded defendant any portion of the pensions which accrued during the two-year period plaintiff worked for General Motors prior to the marriage (part time and full time) or during the four-year and four-month period he worked for the automaker subsequent to entry of the divorce judgment. We therefore remand the matter to the trial court for a redetermination of defendant's share of the pension amounts received by plaintiff. In making this redetermination, we direct the court to employ either the life-annuity method used in *Zecchin v Zecchin,* 149 Mich App 723; 386 NW2d 652 (1986), or the life-expectancy method used in *Perry v Perry,* 133 Mich App 453; 350 NW2d 275 (1984), and *Boyd v Boyd,* 116 Mich App 774; 323 NW2d 553 (1982).[2] Those methodologies are to be modified, though, to take into ac-

---

[2] We choose not to follow the pension valuation method used in *Kilbride, supra,* as that case has been the object of criticism from certain family law experts. See 15 Mich Family L J 12 (Dec, 1988), pp 1-3, 10-12.

count the pension values which accrued prior to the marriage (i.e., the "coverture factor," *Kilbride, supra,* p 439) and that which accrued after termination of the marriage.

II

Plaintiff next challenges the trial court's division of the marital property. Specifically, he claims that the division was unfair because defendant was awarded nearly all of the nonpension marital property while he was ordered to assume the parties' joint debts. We find the property distribution was equitable.

The law governing the distribution of marital property was summarized by this Court in *Vance v Vance,* 159 Mich App 381, 385-386; 406 NW2d 497 (1987), lv den 429 Mich 870 (1987):

> In dividing marital assets, a court should seek a fair and equitable distribution. *Hatcher v Hatcher,* 129 Mich App 753; 343 NW2d 498 (1983). This Court reviews property settlements in divorce cases de novo on the record, but will not reverse or modify the property division unless convinced that it would have reached another result had it occupied the position of the trial court. *Paul v Paul,* 362 Mich 43; 106 NW2d 384 (1960); *Bone v Bone,* 148 Mich [sic: Mich App] 834, 838; 385 NW2d 706 (1986).
>
> The trial court has great discretion in the adjustment of property rights upon divorce. The objective in arriving at a property settlement is to reach a fair and equitable division in light of all the circumstances. *Bone, supra.* There are no set mathematical formulas governing a division of property. The division does not have to be equal, but it must not be inequitable. *Bone, supra; Christofferson v Christofferson,* 363 Mich 421; 426; 109 NW2d 848 (1961). In making the division, the trial judge must examine several factors: the duration

of the marriage, contributions of the parties to the joint estate, the parties' station in life and earning abilities, fault or past misconduct, and other equitable circumstances. *Parrish v Parrish,* 138 Mich App 546, 558; 361 NW2d 366 (1984).

With the above principles in mind, we find that the division of marital property was not, as plaintiff urges, unfair or inequitable.

In dividing the marital property, the court stated that plaintiff was "more than 50 percent responsible for the dissolution of the marriage" in that he began an extramarital affair with another woman in 1980. The fault of a party in causing the divorce is a proper consideration in dividing marital property. The court also stated, but without explanation, that it was considering the source of the property, the length of the marriage, and the parties' contributions, needs, and earning abilities. To those considerations, we add the following. Although plaintiff was the family breadwinner, and thus responsible for acquiring most of the parties' material worth, the marriage was relatively long (almost twenty-four years) and defendant contributed greatly by working to put plaintiff through school and by raising the parties' two children. Moreover, at the time of the divorce judgment, defendant was without employment and had returned to school to finish her degree. Plaintiff, on the other hand, was employed and was receiving a substantial salary from General Motors. Additionally, defendant had numerous medical problems which necessitated treatment which could limit her employment prospects. Finally, while it is true that defendant received the greater share of the marital property, the value of that property—when considered in light of plaintiff's salary and the life-style to which the parties had become accustomed—was relatively insubstantial.

For those reasons, we affirm the property division ordered by the trial court.

III

Plaintiff also claims that the trial court abused its discretion in awarding defendant alimony in the amount of $250 per week until plaintiff reaches age sixty-five or dies or until defendant remarries or dies. We disagree.

The grant or denial of alimony lies within the sound discretion of the trial court. *Zecchin, supra,* p 733. Although this Court reviews an award of alimony de novo, we will not modify the award unless convinced that, sitting in the position of the trial court, we would have reached a different result. *Wilkins v Wilkins,* 149 Mich App 779, 788; 386 NW2d 677 (1986). In computing an award of alimony, the trial court must consider the following factors: (1) the duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the ages of the parties, (4) their health, (5) their stations in life, (6) the necessities and circumstances of the parties, and (7) the earning abilities of the parties. *Parrish, supra,* p 557. In addition, a party's fault in causing the divorce is a valid consideration in dividing the marital assets or awarding alimony. See *Zecchin, supra,* pp 727-729; *Davey v Davey,* 106 Mich App 579, 581; 308 NW2d 468 (1981).

In the instant case, the trial court gave the following explanation for awarding defendant alimony:

The cases dealing with the award of alimony have been discussed at length by both parties. The Court believes an award of alimony in favor of defendant is appropriate and will award the sum

of $350.00 per week until defendant dies, remarries, or upon plaintiff's retirement.

In making this award of alimony the Court notes that Mrs. Kurz has a need for the alimony in order to sustain her standard of living. Further, such factors as Mrs. Kurz's age, health, future employment opportunities and the husband's ability to pay alimony have been considered.

Having reviewed the record de novo, we find that the above reasons do, in fact, favor the award of alimony to defendant in the amount of $250 per week. Had we sat as the trial court, we would not have reached a different result.

In a related argument, plaintiff claims the trial court abused its discretion and exceeded its authority on remand by this Court in awarding defendant alimony beyond completion of the appeal. In our remand order, we directed that the "[p]roceedings on remand are limited to this issue as raised in the motion filed in this Court." Contrary to what plaintiff asserts, the motion did not limit its request for alimony only for the time of appeal. Rather, the motion requested that this Court "remand the matter to the Cheboygan County Circuit Court upon the rendition of the opinion in this appeal, with the recommendation that such alimony continue thereafter [i.e., subsequent to a decision on appeal]." Although we declined to make the recommendation urged by defendant, it is clear that she sought alimony beyond this appeal. Our remand order recognized this when it directed the lower court to address the "issue as raised in the motion filed in this Court."

Also by way of related argument, plaintiff claims the trial court abused its discretion in requiring him to maintain a life insurance policy naming defendant as sole beneficiary so as to secure her

right to alimony. We agree. Under the terms of the divorce judgment, plaintiff's obligation to pay alimony ceased upon the occasion of his death. Defendant was not awarded a lump sum alimony award which plaintiff was absolutely obligated to pay, even posthumously. At the moment the insurance proceeds became payable, defendant was no longer entitled to the very award which the insurance policy was meant to secure. Moreover, if there was an arrearage in alimony at the time of plaintiff's death, defendant could collect merely by making a claim against the estate. Hence, the trial court's order to maintain the insurance policy served no real purpose. We therefore vacate that particular requirement of the divorce judgment.

IV

Plaintiff next argues that the trial court abused its discretion in ordering him to pay defendant's attorney fees and costs. We find no abuse of discretion.

In this state, the general rule regarding the recovery of attorney fees and costs by a party in a divorce action is that such are not recoverable as a matter of right. Attorney fees and costs are to be awarded only where necessary to preserve the party's ability to carry on or defend the action. MCL 552.13; MSA 25.93; MCR 3.206; *Atkinson v Atkinson,* 160 Mich App 601, 612; 408 NW2d 516 (1987). The granting of attorney fees and costs rests in the sound discretion of the trial court. This Court will not disturb the award or denial of attorney fees and costs absent an abuse of that discretion. *Atkinson, supra,* p 612; *Donahue v Donahue,* 134 Mich App 696, 701; 352 NW2d 705 (1984).

In the instant case, although the trial court did

not make an express finding that defendant would be unable to defend the action without an award, such finding is implicit from the court's other rulings. The court found that defendant had limited present means of support and that her health was poor. It also found that plaintiff, in contrast, had the means to pay the attorney fees and costs and that he enjoyed a far greater earning potential. Those findings are well supported by the evidence. And, while we recognize that defendant was awarded alimony and a substantial portion of the marital property, much of the value of those awards appears to be either uncollectible at this time or not subject to ready liquidation. Also, the awards were meant to provide defendant with a means of support. Under the circumstances of this case, she should not be forced to invade those awards in order to pay her attorney fees and costs. See *Ozdaglar v Ozdaglar,* 126 Mich App 468, 473; 337 NW2d 361 (1983).

V

In summary, we reverse that portion of the divorce judgment regarding the division of plaintiff's employment pensions and remand for a redetermination of defendant's share thereof. We also reverse the order requiring plaintiff to maintain a life insurance policy naming defendant as sole beneficiary. We affirm the remainder of the divorce judgment, i.e., the award of alimony, the division of nonpension marital property, and the award of attorney fees and costs to defendant.

Affirmed in part, reversed in part, and remanded for a redetermination of defendant's share of plaintiff's pension.[3] We do not retain jurisdiction.

---

[3] By affirming the alimony award and reversing the pension distribution, we might be accused of committing the same error previously

MURPHY, J. *(concurring in part and dissenting in part)*. I concur with the majority opinion with the exception of its construction of MCL 552.18(1); MSA 25.98(1) and thus its decision to reverse that provision of the divorce judgment regarding the division of plaintiff's pension.

*Kilbride*[1] notwithstanding, I do not interpret MCL 552.18(1); MSA 25.98(1) as narrowly as my colleagues. Rather, I construe this statutory section as (1) authorizing the trial court in a divorce action to reach any assets described if those assets accrued at any time during the marriage and, (2) requiring the court to consider the described assets as part of the marital estate. I do not read this statute as limiting the value which is to be placed on the assets or limiting the method in which the court disposes of the assets.

Pension, annuity, and retirement benefits vary greatly. Therefore, decisions regarding the valuation, division, and distribution of pension benefits must necessarily depend upon the facts presented to the trial court along with all other relevant considerations. Requiring, as *Kilbride* apparently does, the reduction to present value of pension interests necessitates assumptions that may not always be appropriate or accurate.

Those assumptions, for example, include determinations of mortality, interest rates, and when

condemned by the Supreme Court in *Kurz v Kurz,* 422 Mich 882 (1985), i.e., considering the property division issue separately from the alimony issue. We do not think this is so. Here, the trial court, in awarding defendant fifty percent of the pensions, clearly did not intend to award a set amount. Rather, the court recognized that she contributed equally to the pensions during the marriage and, therefore, she should be compensated equally. The instant decision attempts to effectuate the trial court's intent in accordance with the letter and spirit of MCL 552.18(1); MSA 25.98(1). This decision is not meant to upset the balance struck by the trial court in fashioning the alimony and property division awards.

[1] *Kilbride v Kilbride,* 172 Mich App 421, 435; 432 NW2d 324 (1988).

retirement might occur. Additionally, reducing pension benefits to present value and requiring that a nonparticipant spouse receive "offsetting" assets of comparable value is not always feasible. These concerns in part brought about the Qualified Domestic Relations Order (QDRO), which was originally established by the courts and later codified by the Retirement Equity Act of 1984, 26 USC 72, 401 *et seq.* The QDRO is meant to provide a mechanism to accommodate deferred distribution of pension interests.

I am not prepared to acquiesce in a brightline test that requires the trial judge to separate out pension earnings which accrued either before the marriage *or which will accrue after the divorce.* For example, with respect to premarriage contributions, why should a pension asset be treated any differently than any other premarital asset, or inheritance for that matter? I doubt that our Legislature, in enacting MCL 552.18(1); MSA 25.98(1), intended that a trial court be required to separate out one year of premarriage contribution to a pension when the court is called upon to resolve a thirty-year marriage and dispose of all marital assets and obligations.

Similarly, I do not believe that postdivorce contribution credits need necessarily be excluded in their entirety. For example, the subsidy to a pension paid under the guise of early retirement might appropriately be subject to distribution, as might be the case under certain pension plans which provide for the availability of increased pension benefits based upon continued service only because the parties contributed to the plan in early years. See, e.g., *Giesen v Giesen,* 140 Mich App 335, 340; 364 NW2d 327 (1985). See also *Jerry L C v Lucille H C,* 448 A2d 223 (Del, 1982).

Rather than adopting a brightline test, I would hold that the pension benefits of a party are an asset which are to be considered part of the marital estate and subject to award in the discretion of the court. The court has been given the statutory authority to determine the rights of the respective parties to these benefits. MCL 552.18(1); MSA 25.98(1) and MCL 552.101(4); MSA 25.131(4). This Court in *Vance v Vance,* 159 Mich App 381, 385-386; 406 NW2d 497 (1987), lv den 429 Mich 870 (1987), appropriately stated that the trial court has great discretion in the adjustment of property rights upon divorce. Moreover, the lower court's objective in arriving at a property settlement is to reach a fair and equitable division in light of all the circumstances. In my view, the brightline test of *Kilbride* removes the lower court's broad discretion in these matters. Simply, pension benefits should be treated like any other asset of the marital estate. That is, pension benefits should be evaluated and distributed in the trial court's discretion.

The trial court must be permitted to establish present value in cases where it is appropriate, but must not be precluded from following a course of distribution that provides for benefits when, if, and as the benefits are paid.

Although in most situations it might be more appropriate for the trial court to award retirement benefits prorated for the years of the marriage in relation to the years worked, I am not prepared to say that the trial court in this case abused its discretion when it undertook the difficult task of dividing the marital estate and arrived at its decision awarding defendant fifty percent of plaintiff's pensions as valued at the time of his actual retirement.