# STATE OF MICHIGAN

# COURT OF APPEALS

LISA SICUSO,

Plaintiff-Appellee,

v

KARL SICUSO,

Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No. 326303
Monroe Circuit Court
LC No. 13-036579-DO

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the portion of the judgment of divorce that pertains to the division of marital property. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties married in 1985. In the early 1990s, they purchased a party store, which was still in operation at the time of the divorce proceedings. Defendant was primarily responsible for operating the party store while plaintiff worked as a school custodian. Defendant historically used hand-written ledgers to record the store's daily financial transactions, but no ledgers for years 2008 or later were ever found or produced. Defendant testified that he discontinued using the written ledgers four or five years before plaintiff filed for divorce on July 31, 2013. However, plaintiff and other witnesses testified that defendant was still using the written ledgers in July 2013. Defendant deposited cash from the store's registers into the store's bank account, but the sums he deposited were substantially lower than the income recorded in the ledgers; as a result, there were substantial unaccounted-for amounts of store income. Plaintiff alleged during the divorce proceedings that defendant was concealing his misappropriation of store funds. Defendant denied concealing funds from plaintiff. He maintained that the unaccounted-for cash was used to pay employees and vendors. Defendant admitted that, before 2013, he paid employees in cash, under-the-table, without withholding income or payroll taxes.

The divorce proceedings culminated in a six-day bench trial, in which the major factual issues included defendant's record-keeping, nonpayment of property and other taxes and debts, the disposition of the store's cash receipts, and a July 18, 2013 domestic violence incident that resulted in a crash between vehicles operated by defendant and plaintiff and led to defendant's convictions for domestic violence and careless driving. Following the trial, the trial court

-1-

divided the marital estate on a 60/40 basis in favor of plaintiff. The trial court awarded plaintiff the full value of her school pension. The court explained that the property division was justified because defendant's questionable financial practices precluded the court from reliably determining defendant's income, and because defendant bore a greater degree of fault for the failure of the marriage. The trial court also reasoned that, although the circumstances warranted an award of spousal support for plaintiff, awarding plaintiff a 60-percent share of the marital estate and her full school pension would result in a fairer outcome than granting her claim for spousal support, because defendant was likely to evade a support obligation by strategically shielding his financial transactions from oversight.

This appeal followed.

## II. STANDARD OF REVIEW

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property." *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). "Findings of fact, such as a trial court's valuation of particular assets, will not be reversed unless clearly erroneous." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). As our Supreme Court explained in *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992):

> If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. But because we recognize that the dispositional ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable.

This Court defers to the trial court's evaluation of the weight of evidence and assessment of the witnesses' credibility. *Fletcher v Fletcher*, 447 Mich 871, 890; 526 NW2d 889 (1994).

## III. PROPERTY DIVISION

Defendant argues that the trial court's 60/40 property division is inequitable and was based on the court's disproportionate assignment of fault. We disagree.

In *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015), this Court explained the procedure to be followed by a trial court in making an equitable property division:

> Equity serves as the goal for property division in divorce actions. [*Sparks v Sparks*, 440 Mich 141, 159; 485 NW2d 893 (1992)]. Although marital property need not be divided equally, it must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs. *Id*. at 149-150.
>
> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5)

life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Id*. at 159-160 (citation omitted).]

The trial court must consider all relevant factors but "not assign disproportionate weight to any one circumstance." *Id*. at 158. In addition, this Court defers to a trial court's findings of fact stemming from credibility determinations. *Id*. at 147.

"Although Michigan has a no-fault divorce law, fault may be considered in the division of assets." *McDougal v McDougal*, 451 Mich 80, 90-91; 545 NW2d 357 (1996); see also *Kurz v Kurz*, 178 Mich App 284, 295; 443 NW2d 782 (1989). "In determining 'fault' as one of the factors to be considered when fashioning property settlements, courts are to examine 'the conduct of the parties during the marriage.' " *Welling v Welling*, 233 Mich App 708, 711; 592 NW2d 822 (1999), quoting *Sparks*, 440 Mich at 157.

Here, although the trial court found that defendant was primarily at fault for the breakdown of the marriage, the 60/40 property split was not predicated solely on fault. The trial court reasoned that a 60/40 property split was also justified because defendant's lengthy history of keeping questionable and unreliable financial records prevented the court from accurately determining defendant's income, which the record evidence suggested was much greater than defendant claimed. The trial court found that the record evidence, discussed further below, established a "reasonable suspicion" that funds were unaccounted-for throughout the store's operation. In addition, the trial court determined that the circumstances supported plaintiff's claim for spousal support, but concluded that awarding plaintiff a 60-percent share of the marital assets would be more equitable than awarding her spousal support considering defendant's capacity to strategically shield his financial transactions from oversight, which might allow him to evade any spousal support obligation.

Defendant primarily challenges the trial court's findings with respect to four categories of evidence. We discuss each in turn.

A. DOMESTIC VIOLENCE INCIDENT

Defendant argues that the trial court gave disproportionate weight to the domestic violence incident of July 18, 2013, and insufficient weight to his allegations of plaintiff's acts of domestic abuse. Defendant relies on his own testimony to argue that plaintiff, not he, was responsible for the vehicular collision on July 18, and that plaintiff actually assaulted him on several occasions.

The trial court found that defendant's conduct on July 18 involved "a terrifying course of events." In his argument, defendant focuses on the collision between the parties' two vehicles that day. The evidence established that it was defendant who precipitated the course of events by

threatening plaintiff at her workplace, damaging a window at her workplace in an apparent attempt to make physical contact with her, and destroying more than $5,000 worth of household property. Although defendant testified that he was blameless for the collision, he pleaded no contest to domestic violence and careless driving. Moreover, plaintiff testified that the incident did not end with the collision, but continued with defendant chasing her and endangering her and their five-year-old granddaughter. The trial court found that plaintiff's testimony about this incident was credible. Moreover, it is apparent that the trial court did not credit defendant's testimony that he was a victim of frequent assaults by plaintiff. The trial court found that defendant treated plaintiff as a "kept woman" and suppressed "her own personal growth/success," thus reflecting its view that defendant exercised a controlling and possibly intimidating influence over plaintiff. Both the trial court's specific findings about the domestic violence incident and its findings about the parties' unequal relationship were within its prerogative to evaluate testimony and the parties' credibility, *Fletcher*, 447 Mich at 890, and were not clearly erroneous.

## B. FINANCIAL IMPROPRIETY IN MANAGING BUSINESS

The trial court found that plaintiff was aware of defendant's management style, which included paying employees "under the table" and keeping records that did not match deposits made into the store's bank account. But it also found that defendant's business acumen, his domineering attitude toward plaintiff, and plaintiff's inferior business knowledge mitigated her share of fault in impeding the trial court's ability to accurately assess defendant's actual income. Defendant argues that these findings are erroneous in light of evidence that plaintiff shared in the management of the store by keeping her own business records, by participating in hiring and firing decisions, and by coming to the store on a daily basis. Having reviewed the evidence and testimony cited by defendant, we conclude that defendant significantly overstates the extent of plaintiff's involvement in the management of the store.

Although plaintiff stated that she visited the store every day, she explained that she generally checked the store for cleanliness and to perform some minor tasks, such as cleaning the coffee pots. Plaintiff's main employment was as a school custodian. Plaintiff testified that she recorded information about the store's performance in a personal calendar, but stated that she did so only occasionally when she had time and only copied the information from defendant's ledger. Although the liquor licenses were in plaintiff's name, defendant testified that this was only because he had a felony record, which disqualified him from holding the licenses. Plaintiff's testimony about reviewing the store's credit card statement does not establish more than casual oversight. Defendant emphasizes that plaintiff made deposits to the store's bank accounts, but plaintiff testified that she did so only a couple of times. Plaintiff denied contributing to defendant's hiring and firing decisions, other than saying whether she liked an applicant.

Defendant argues that plaintiff's forced entry into the store's office on August 16, 2013 indicates that she believed she had managerial authority. This event occurred after plaintiff had filed for divorce, and after plaintiff was told by police that she had the right to break down the door to the store's office if defendant would not give her the key. The circumstances indicate that plaintiff was attempting to safeguard her interests during the divorce proceedings. They do not establish the extent of her involvement in the store's management before the proceedings

began.[1]  Defendant's reliance on plaintiff's efforts to run the store for five days after the August 16 incident is also misplaced, given that this was not a normal event in the store's history, but an isolated occurrence warranted by the divorce proceedings.

In sum, the record does not support defendant's argument that plaintiff was significantly involved or significantly collaborated with defendant in the management of the store.  The trial court did not clearly err in finding that defendant and plaintiff were not equal participants in running the business, or in finding that defendant was primarily responsible for failing to adhere to reliable accounting procedures, and failing to comply with employment and tax laws and regulations.

## C.  NONPAYMENT OF TAXES AND OTHER BILLS

The trial court stated that it was "satisfied that, while [defendant] was ordered to manage the store and maintain the status quo, he has failed to timely pay taxes which are still outstanding."  The court did not specifically comment on failure to pay credit card or other bills.  Defendant argues that the trial court failed to consider that there was no evidence that the store had the ability to pay these bills.  Defendant also contends that the trial court gave insufficient weight to his willingness to cash out his life insurance policy and sell his Mustang to pay the outstanding debt.  In addition, defendant blames plaintiff for the nonpayment of the 2012 and 2013 income taxes because she refused to sign the tax returns.

The trial court clearly discredited defendant's testimony that he did not know how much money the store earned from sales in recent months.  The trial court also disbelieved defendant's testimony that the store's sales had sharply declined contemporaneously with the divorce proceedings.  We defer to the trial court's findings regarding witness credibility, *Fletcher*, 447 Mich at 890, especially where, as here, defendant's financial practices were far from transparent and involved large sums of unaccounted-for cash.  Defendant's testimony that the store's sales had been declining since September 11, 2001 was contradicted by evidence that tax returns showed sales growth between 2009 and 2012, except for 2010 when the nearby state park was closed.  Moreover, plaintiff's refusal to sign the tax returns was not unjustified where the returns failed to disclose payroll information.

## D.  POST-SEPARATION CONDUCT

Defendant also argues that the trial court erred in considering his conduct after he and plaintiff had separated.  Defendant asserts that this conduct was not relevant to assessing his share of fault in the failure of the marriage.  Defendant also contends that his post-separation activity was not relevant to the dissipation of marital funds because he declared his willingness to pay his personal, post-separation expenses from his own money.

---

[1] The trial court acknowledged that plaintiff used poor judgment in this incident.  However, her actions during this incident do not establish her regular involvement in the store's management.

The parties separated after the domestic violence incident on July 18, 2013. A private investigator documented defendant's visits to strip clubs, adult bookstores, and hotels on July 29 and 31, 2013. Plaintiff filed for divorce on July 31, 2013. Defendant's activities during this timeframe are not so remote from the initiation of legal proceedings that they must be disregarded. This factor distinguishes this case from *Knowles v Knowles*, 185 Mich App 497; 462 NW2d 777 (1990), on which defendant relies. Additionally, defendant's visits to various establishments on July 29 and 31 were relevant to refuting his testimony that he worked long hours in the store and that the store's sales were so low that he could not draw his full salary, pay his tax obligations, or pay off the full credit card balance. Moreover, the substantial evidence of defendant's fault with respect to his financial practices and the domestic violence incident diminishes the comparative importance of his post-separation activities in the trial court's findings.

In sum, considering the trial court's findings, which are not clearly erroneous, we are not left with a firm conviction that the 60/40 division was inequitable. *Sparks*, 447 Mich at 890.

## IV. PLAINTIFF'S PENSION

Defendant also argues that the trial court erred by awarding plaintiff the full value of her school pension. We disagree. Defendant cites MCL 552.18(1), which provides:

> Any rights in and to vested pension, annuity, or retirement benefits, or accumulated contributions in any pension, annuity, or retirement system, payable to or on behalf of a party on account of service credit accrued by the party during marriage shall be considered part of the marital estate subject to award by the court under this chapter.

MCL 552.18 provides that pension rights accrued during marriage are marital property, but it does not preclude a court from awarding a pension fully to one party. *Pickering v Pickering*, 268 Mich App 1; 706 NW2d 835 (2005).

In *Pickering*, the defendant-husband argued that the trial court erred in awarding the plaintiff-wife 100 percent of the survivorship interest in his state pension. This Court disagreed, holding that a trial court's award of pension benefits was subject to general property division principles:

> A right to vested pension benefits accrued by a party during the marriage must be considered part of the marital estate subject to award upon divorce. MCL § 552.18(1); *Vander Veen v Vander Veen*, 229 Mich App 108, 110–111; 580 NW2d 924 (1998). However, treatment of pension benefits may vary. Depending on the equities and the circumstances, pensions may be distributed through either the property division or the award of alimony. *Magee v Magee*, 218 Mich App 158, 164–165; 553 NW2d 363 (1996). Methods of valuation and distribution of pension interests may also vary. *Boyd v Boyd*, 116 Mich App 774, 782; 323 NW2d 553 (1982) (opinion by Bronson, J.). Although pension benefits that accrued both during and before or after the marriage should generally be allocated on the basis of the ratio of the years the parties were married while the

employed spouse earned the pension to the total years in which the employed spouse worked to accrue the pension, *Vander Veen, supra* at 113, 580 NW2d 924, we have also held that pension benefits accrued before marriage may be the subject of a division of property. *Booth v Booth*, 194 Mich App 284, 291; 486 NW2d 116 (1992). We have noted that QDROs [Qualified Domestic Relations Orders] routinely contain provisions designating an ex-spouse as a surviving spouse, entitling the ex-spouse to survivorship rights in a former spouse's pension. *Roth v Roth*, 201 Mich App 563, 566; 506 NW2d 900 (1993). The security of the family is the paramount concern, and a court may use any property of either party to achieve just and reasonable property division after considering the character and situation of the parties, and all the other circumstances of the case. *Booth, supra* at 290, 486 NW2d 116, quoting *Rogner v Rogner*, 179 Mich App 326, 329–330; 445 NW2d 232 (1989). [*Pickering*, 268 Mich App at 7-8.]

This Court concluded that the trial court's distribution of the pension survivorship benefit was equitable, although it partially invaded the defendant's separate property, because the trial court determined that the plaintiff's portion of the marital estate would be insufficient to maintain her. *Id*. at 9-10.

In this case, the trial court concluded that the equities and circumstances of the parties would be best served by granting plaintiff the full value of her pension. The trial court opted for this division in lieu of granting plaintiff spousal support because it anticipated, based on the record evidence, that defendant would find ways to evade paying plaintiff her full allotment of support. This was a fair and equitable decision under the circumstances.

Moreover, defendant failed to present any evidence of the present value of plaintiff's pension. In *Beaty v Beaty*, 167 Mich App 553, 557; 423 NW2d 262 (1988), this Court held that "[t]he party seeking to include a pension in the marital estate bears the burden of proving a reasonably ascertainable value; if the burden is not met, the interest should not be considered an asset." Accordingly, the trial court did not err in failing to assign a value to the pension, or in distributing it to plaintiff free of claim by defendant.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra