BOOTH v BOOTH

Docket No. 129679. Submitted April 14, 1992, at Detroit. Decided May 18, 1992, at 9:15 A.M.

Iris A. Booth was granted a divorce from Michael A. Booth by the Wayne Circuit Court, Susan D. Borman, J. The court refused to give effect to an antenuptial agreement; ordered that the bulk of the marital estate be divided equally after the defendant had been given credit for his down payment on the marital home; granted joint legal custody of the children of the marriage, with the plaintiff being given physical custody; ordered that the defendant's visitation with the children be supervised; and ordered that the defendant pay child support. The defendant appealed.

The Court of Appeals *held:*

1. The antenuptial agreement should have been given effect if it was not obtained by fraud, duress, mistake, or misrepresentation, was not unconscionable when executed, and has not become unfair and unreasonable because of changed circumstances. Remand is necessary so that the trial court may consider whether the antenuptial agreement is enforceable.

2. If the antenuptial agreement is found to be unenforceable, the trial court must make additional findings of fact concerning the distribution of the marital estate. The court may treat the pension benefits accrued by the defendant before marriage as part of the marital estate if it determines that use of those benefits is necessary to achieve suitable support of the family.

3. The trial court must make findings of fact with regard to the needs of the children and each parent's ability to pay and

REFERENCES

Am Jur 2d, Divorce and Separation §§ 19, 766, 881, 905, 921; Husband and Wife §§ 21-22, 279.

Enforceability of premarital agreements governing support or property rights upon divorce or separation as affected by fairness or adequacy of those terms—modern status. 53 ALR4th 161.

Modern status of views as to validity of premarital agreements contemplating divorce or separation. 53 ALR4th 22.

Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.

may deviate from the amount calculated in accordance with the formula found in the Michigan Child Support Guideline Manual only if it determines that application of the formula would be unjust or inappropriate.

4. The record supports the trial court's decision to order supervised visitation.

Reversed and remanded.

1. DIVORCE — ANTENUPTIAL AGREEMENTS — VALIDITY.

An antenuptial agreement relative to the division of property upon divorce is valid and enforceable if the agreement was not obtained through fraud, duress, mistake, or misrepresentation; was not unconscionable when executed; and has not become unfair and unreasonable because of changed circumstances.

2. DIVORCE — PROPERTY DIVISION — PREVIOUSLY ACQUIRED PROPERTY — PENSION BENEFITS.

Property rights acquired before marriage normally are not subject to division upon divorce; however, a court may include in the division of marital property pension benefits that accrued before marriage where use of those benefits is necessary to achieve suitable support of the family, giving consideration to the ability of either party to pay, the character and situation of the parties, and all other circumstances of the case (MCL 552.23; MSA 25.103).

*Chrysanthe A. Kotsis,* for the plaintiff.

*Law Offices of James A. Kendrevas, P.C.* (by *Bill Colovos*), for the defendant.

Before: MURPHY, P.J., and NEFF and J. R. MC-DONALD,* JJ.

NEFF, J. Defendant appeals as of right from a May 11, 1990, judgment of divorce.

I

The parties were legally married on September 17, 1981, and lived as husband and wife until June

* Former circuit judge, sitting on the Court of Appeals by assignment.

13, 1989. Two children were born of the marriage: Michael John Booth, born November 25, 1984, and Jessica Ann Booth, born November 29, 1987. On July 3, 1989, plaintiff filed a verified complaint for divorce, alleging that there had been a breakdown in the marriage relationship and requesting custody of the minor children because of defendant's violent behavior.

At the bench trial, plaintiff testified that defendant physically abused their son and emotionally abused her. Regarding her earning capacity, plaintiff stated that she was unsure of what kind of employment she was capable of obtaining, but said she had graduated from high school. She stated that defendant owned the marital home at the time of the marriage and admitted that she signed an antenuptial agreement. Plaintiff said that she desired the marital home and sole custody of Michael and Jessica. In addition, she agreed with the recommendation of the friend of the court that defendant pay $241 a week in child support.

Defendant testified that he was employed by Great Lakes Steel during the marriage and, at the time of the marriage, had worked there for eight years. Defendant testified that his biweekly take home pay was $880 and that, on rare occasions, he picked up some side work and earned approximately $200 from each side job. With regard to the antenuptial agreement, defendant testified that he and plaintiff entered into the agreement because he had accumulated a large amount of property before their marriage. Defendant denied physically abusing plaintiff and the minor children, although he admitted hitting Michael to discipline him. Defendant testified that he wanted credit for the assets he acquired before the marriage, but that everything else should be divided equally between the parties. He said that he was not able to pay

alimony, did not want his wife to live in the marital home because he cannot afford it, and did not want supervised visitation.

After the trial, the trial court entered an oral opinion on the record and a judgment of divorce. The court awarded both parties a one-half interest in the marital home, as tenants in common, with plaintiff being awarded exclusive possession of the marital home for five years. Defendant was given credit for a $9,000 down payment. Other than a few household items, the remainder of the marital estate was divided equally between the parties. No alimony was awarded.

With regard to the minor children, the trial court awarded the parties joint legal custody of Michael and Jessica and plaintiff sole physical custody. The trial court ordered that defendant have supervised visitation with the minor children and pay $241 a week in support until Michael reaches the age of eighteen, at which time support payments will be reduced to $157 a week. Defendant was also ordered to pay ninety percent of any uninsured medical payments.

II

Defendant first argues that the trial court erred in finding that, in Michigan, antenuptial agreements are unenforceable as a matter of law and in refusing to enforce the agreement between the parties.

Before the marriage, plaintiff, by her own admission, signed an agreement that provides:

Pre Maritial [sic] Agreement

I, Iris Ann Hajec, of my own Free Will, Agree that in the Event of A Default in My Marriage with Michael A. Booth By either Party, I will

Release ALL Interest in any Equity, Interest, Property and Funds That Michael A. Booth has Accumulated On or Before September 10, 1981. I have Read the Following List and Agree to its Contents. All Equity, Interest, Property and Funds Obtained On or After September 11, 1981 Shall be Shared Equally.

| | | |
|---|---|---|
| 23253 Edward Dearborn Mi. | Equity | 40,000.00 |
| 4334-36 Ogden Detroit Mi. | Equity | 5,500.00 |
| 1979 Chevorlet [sic] Corvett [sic] | Equity | 12,500.00 |
| 1977 Pontiac Grand Prix | Equity | 3,000.00 |
| 1979 Yamaha Special 750 | Equity | 2,000.00 |
| 1981 Rinkerbuilt Boat & Motor | Equity | 6,000.00 |
| 1980 Minolta Camera & Equipment | Equity | 1,200.00 |
| Detroit Edison Stock | Equity | 185 Shares |
| Great Lakes Steel Credit Union Savings | | 1,800.00 |
| Michigan National Bank Ck. & Sav. | | 2,800.00 |
| Misc. Furniture & Stereo Equipment | Value | 2,000.00 |

Note: Under NO Circumstances Will this Agreement Be Changed.

The trial court stated on the record that antenuptial agreements made in contemplation of divorce are unenforceable in Michigan, but did not make any further findings with regard to the agreement.

Recently, in *Rinvelt v Rinvelt,* 190 Mich App 372, 379, 382; 475 NW2d 478 (1991), this Court specifically held that antenuptial agreements that govern the division of property are enforceable in the context of divorce. In doing so, the *Rinvelt* panel agreed with the rationale and the limitations with regard to such agreements set forth in *Brooks v Brooks,* 733 P2d 1044 (Alas, 1987). *Rinvelt, supra,* pp 379-382. In *Brooks, supra,* p 1049, the Alaska Supreme Court recognized that antenuptial agreements are generally valid and enforceable, provided that the following three criteria are considered:

1. Was the agreement obtained through fraud,

duress or mistake, or misrepresentation or nondisclosure of material fact?

2. Was the agreement unconscionable when executed?

3. Have the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?

Accordingly, we remand this case to the trial court for findings on each of the above criteria and a determination of whether the antenuptial agreement is enforceable. On remand, plaintiff has the burden of proving and persuading the trial court that the antenuptial agreement is not enforceable. *In re Benker Estate,* 416 Mich 681, 684; 331 NW2d 193 (1982); *Rinvelt, supra,* p 382.

III

Defendant next argues that the trial court abused its discretion in distributing the marital estate. Essentially, defendant claims that the trial court did not give him proper credit for property acquired before the marriage.

If the antenuptial agreement is enforceable, the trial court must then make a redetermination regarding the distribution of the marital estate pursuant to the agreement. If the agreement is found to be invalid, the trial court shall make additional factual findings supported by reasons for distributing the marital estate because the existing inadequate factual findings make appellate review of this issue impossible.

Although we remand for further findings, we note that defendant claims that the trial court abused its discretion in distributing pension benefits that accrued before the marriage.

A conflict exists in this Court with regard to

whether a pension accrued before a marriage may be divisible.

In *Rogner v Rogner,* 179 Mich App 326; 445 NW2d 232 (1989), the defendant argued that the trial court erroneously divided his pension equally where one-third of the pension accrued before the marriage. *Id.,* p 329. In *Rogner, supra,* pp 329-330, this Court, while recognizing that property rights acquired before the marriage normally are not subject to division, determined that the trial court did not abuse its discretion by including pension benefits attributable to service before the marriage in its division of property, setting forth the following rationale:

> The major consideration is the security of the family and the court may utilize any property in the real and personal estate of either party to achieve suitable support for the family as the court "considers just and reasonable after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23; MSA 25.103; *Zimmers v Zimmers,* 346 Mich 28; 77 NW2d 267 (1956). *Reitz v Reitz,* 338 Mich 309; 61 NW2d 81 (1953).

Another line of cases holds that the portion of a pension that accrued before the marriage cannot be considered part of the marital estate subject to distribution.[1] *Lesko v Lesko,* 184 Mich App 395; 457 NW2d 695 (1990); *Kurz v Kurz,* 178 Mich App 284, 292; 443 NW2d 782 (1989); *Kilbride v Kilbride,* 172 Mich App 421, 435; 432 NW2d 324 (1988). The *Kilbride* line of cases rely in large part on MCL 552.18(1); MSA 25.98(1), which provides:

---

[1] But see the opinion of MURPHY, J., concurring in part and dissenting in part, in *Kurz v Kurz,* 178 Mich App 284, 299-301; 443 NW2d 782 (1989).

> Any rights in and to vested pension, annuity, or
> retirement benefits, or accumulated contributions
> in any pension, annuity, or retirement system,
> payable to or on behalf of a party on account of
> service credit accrued by the party during mar-
> riage shall be considered part of the marital estate
> subject to award by the court under this chapter.

Because we believe the rule in *Rogner* is the better-reasoned approach, we hold that pension benefits accrued before marriage may be the subject of a division of property. See also the opinion of MURPHY, J., concurring in part and dissenting in part in *Kurz, supra,* pp 299-301. To the extent that *Kilbride, Kurz,* and *Lesko* flatly prohibit the inclusion of pension benefits accrued before the marriage in the division of property, we disagree with those cases. On remand, the trial court may treat as part of the marital estate subject to division those pension benefits that accrued before the marriage if such treatment is "just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23(1); MSA 25.103(1); *Zimmers, supra; Reitz, supra; Rogner, supra.*

IV

Defendant next argues that the trial court abused its discretion in ordering that he pay $241 a week for the support of the parties' two minor children.

In determining child support, the trial court merely stated on the record that because no alimony was awarded in this case, it was adopting the recommendation of the friend of the court and ordered that defendant pay $241 a week for support of the two minor children. Again, the lack of

adequate findings frustrates our review of this issue. Consequently, on remand the trial court must make findings with regard to the needs of the children and each parent's ability to pay. *Thames v Thames,* 191 Mich App 299, 306; 477 NW2d 496 (1991); *Hoke v Hoke,* 162 Mich App 201, 206; 412 NW2d 694 (1987). We note that effective October 10, 1990, the trial court may deviate from the friend of the court support formula only if it determines that application of the formula would be unjust or inappropriate. MCL 722.27(2); MSA 25.312(7)(2), MCL 552.16(2); MSA 25.96(2). On remand, the trial court is to utilize the 1992 edition of the Michigan Child Support Guideline Manual.[2]

v

Defendant finally contends that the trial court erred in ordering supervised visitation. We disagree.

The Child Custody Act of 1970, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, governs child custody disputes between parents, agencies, or third parties. This Court reviews an order regarding visitation de novo, but will not reverse the order unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or committed a clear legal error. *Thames, supra,* p 305. Visitation shall be granted if it is in the best interests of the child and in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent. MCL 722.27a(1); MSA 25.312(7a)(1). In determining the frequency,

---

[2] We note that the difference between the 1990 and 1992 guidelines is insignificant and believe that it makes more sense to assess the current status of the parties and minor children.

duration, and type of visitation to be granted, the trial court may consider the reasonable likelihood of abuse or neglect during visitation, MCL 722.27a(4)(c); MSA 25.312(7a)(4)(c), and may require that visitation occur in the presence of a third party or agency, MCL 722.27a(6)(f); MSA 25.312(7a)(6)(f).

Defendant admitted that he struck Michael, then age five, with a belt on at least one occasion. Plaintiff testified that defendant hit Michael when he was six or eight weeks old. In addition, she said that defendant had been jailed for physically abusing her. Under these circumstances, the trial court did not abuse its discretion in ordering supervised visitation.

VI

We reverse the judgment of divorce and remand to the trial court for further findings consistent with this opinion. We do not retain jurisdiction.