# STATE OF MICHIGAN

# COURT OF APPEALS

SEANNEEN BROWN,

Plaintiff-Appellant,

v

LAWRENCE HERMAN BROWN,

Defendant-Appellee.

UNPUBLISHED
October 20, 2016

No. 327826
Clinton Circuit Court
Family Division
LC No. 13-024784-DM

Before: RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's judgment of divorce. Plaintiff challenges the trial court's distribution of the marital property, the spousal support order, and the court's order to impute income to plaintiff to calculate the amount of child support that defendant is required to pay to plaintiff. We affirm.

The parties married in June 1990. Defendant is 50 years old; plaintiff is 46. Defendant is employed with the State of Michigan. Plaintiff graduated from Michigan State University with a degree in biology a short time before the marriage and thereafter worked in a laboratory for ten months. Plaintiff explained that she and defendant decided to start a family and that they agreed that she would stay home and raise the children. The parties have four children, the first of which was born in September 1992. At the time of the trial, only one of the children remained a minor and was 16 years old.

In September 2004, plaintiff began working as a substitute teacher in the same school district that all four children attended. Plaintiff explained that she began this job because she wanted to help defendant out by "bringing in some money," while still remaining a stay-at-home mom. Plaintiff testified that it was her job to pay the family bills and that the parties had equal access to their funds during the marriage.

Plaintiff testified that defendant's income decreased at one point during their marriage, so they used credit cards to support the family. She admitted that the parties were in debt. When the debt became overwhelming, plaintiff explained, she decided to go back to school so that she could further her education and get a higher paying job. Plaintiff enrolled in an accelerated nursing program. Defendant stated that he began working a second job when he learned that the

-1-

parties were "upside down in [their] bills." He also claimed that he asked plaintiff to obtain employment to help remedy the situation. Plaintiff claimed that defendant never asked her to get a job until she was already enrolled in nursing school and had already accumulated student loans.

In addition to the marital home, the parties owned a vacant lot. An appraiser testified that the marital home is worth $175,000 and the lot is worth $20,000. Defendant testified that a similar empty lot in their neighborhood has been listed for sale for $10,000, yet it has not sold, despite being on the market for ten years. The marital home is subject to two mortgages, with $138,674.04 still due on the first mortgage and $30,727.96 still due on the second mortgage. Defendant stated that he believes that the house is worth less than what he owes on the mortgages.

Plaintiff testified that she filed for bankruptcy in September 2014. Plaintiff acknowledged that, on the bankruptcy petition, she listed the martial home as having a $160,000 value and the parties' empty lot as having an $8,000 value. Over $28,000 in credit-card debt was discharged, plaintiff testified. Defendant testified that there is still credit-card debt in his name, totaling $18,202.38, which was accrued during the marriage.

Plaintiff testified that she drives a Town and Country van. She initially leased the vehicle and, in February 2014, the lease expired. She then borrowed $14,500 from her father to purchase the vehicle. Plaintiff acknowledged that she listed this loan in her bankruptcy petition and that the loan was discharged.

Plaintiff testified that she owes approximately $30,000 in student loans. She explained that in 2012 and 2013 she received "excess aid" checks for $4,550 and $4,245. Plaintiff said that she used this money to help pay the family bills. She also admitted that she purchased a riding lawnmower with that money, explaining that it was intended to be a gift for defendant for Father's Day. Defendant said that he told plaintiff, before she purchased the lawnmower, that she should not purchase it because they could not afford it, but that he nevertheless accepted the gift and used it during the marriage.

Before trial, the court ordered defendant to pay $1,229 a month in temporary spousal support and $1,271 a month in temporary child support. Plaintiff requested $1,900 in non-modifiable spousal support until July 2016, $2,700 in non-modifiable spousal support for 36 months thereafter (to assist with student-loan payments), and $1,200 in modifiable spousal support for 60 months thereafter. Plaintiff testified that she financially supports the parties' adult children and that those expenses were included in her expectations for spousal support. Defendant requested that if any spousal support were ordered, "it should be modifiable, of a minimal amount and for a very short duration."

In an oral opinion, the court stated that it was not finding fault in this case. It awarded defendant the marital home, along with full responsibility for the mortgages and outstanding taxes. The court further ordered that defendant was responsible for the debt attributable to the credit cards and line of credit in his name. Defendant also received a 2007 Chevy Aveo and a motorcycle, although the court noted that there was no evidence of the value of these vehicles. The court awarded plaintiff the Town and Country van, finding that its value was $14,500 because "that was the price she, as a willing buyer, actually paid to pay off that lease when it

came due." Further, each party received the personal property in their possession, although the court awarded defendant the lawnmower and a few other miscellaneous items. The court also attributed plaintiff's student-loan debt to her.

The court ordered that the spousal support be reduced to $800 a month effective February 2015 and continue through September 2015. The court noted that plaintiff was expecting to complete her nursing-school program in June 2015 and that this order would result in her receiving spousal support for two full years. Finally, the court ordered that child support be recalculated by the Friend of the Court. To calculate the child support, the court imputed income to plaintiff for 20 hours of work a week at minimum wage. Defendant was ultimately ordered to pay plaintiff $860 a month for child support.

Plaintiff first argues that the trial court's distribution of the marital property was not equitable. When reviewing a trial court's divorce disposition, an "appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). The *Sparks* Court stated, "[B]ecause the dispositional ruling is an exercise of discretion and . . . appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Id*. at 152 (citations omitted). A reviewing court must defer to a trial court's factual findings regarding credibility. *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015).

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). The court does not need to divide the property equally, but it must divide it equitably considering the parties' contributions, faults, and needs. *Richards*, 310 Mich App at 694. The Supreme Court has held that the trial court must consider the following factors, when relevant:

(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks*, 440 Mich at 159-160.]

The court may consider additional relevant factors, including "the interruption of the personal career or education of either party." *Id*. at 160. The court may not give disproportionate weight to one factor. See *id*. at 163.

Plaintiff argues that several of the trial court's factual findings were erroneous. Plaintiff argues that the court should have attributed $8,795 of her student loans to the marital estate. This argument is based on her testimony that she received "excess aid" in 2012 and 2013 totaling that amount. However, she did not present any documentary evidence showing that any of those funds were used for marital purposes. Deferring to the trial court's credibility determinations,

specifically stated or implied, the court's decision to attribute all of plaintiff's student loans to her was not clearly erroneous.

The court similarly did not clearly err in finding the value of the Town and Country van to be roughly equal to what plaintiff paid for it less than a year earlier. Nor did the court err in failing to consider the loan she received from her father to buy the van. While plaintiff claims she still feels morally obligated to pay the money back, she admitted she is under no legal obligation to do so. She admitted that this loan was discharged during her bankruptcy proceeding. The trial court's decision not to consider this discharged debt as marital debt attributable to plaintiff was not clearly erroneous.

Next, plaintiff claims that the court erred by valuing the parties' vacant lot at $8,000, despite an appraiser's testimony that it was worth $20,000. However, plaintiff listed the value of the lot on her bankruptcy petition as $8,000. Also, the trial court noted that the appraiser used lots in different areas to determine the value, while defendant testified that a similar lot in the area had been listed for sale at $10,000 for years but had not yet sold. In its opinion, the trial court considered the appraiser's testimony but noted that it found defendant's valuation more credible. The court acted within its discretion to credit one valuation over another, especially in light of plaintiff's bankruptcy petition. No error has been shown.

The record indicates that the trial court considered the factors relevant to this case. Consistent with the parties' testimony, the court found that this was a 24-year marriage. The court noted that defendant makes approximately $72,000 a year and plaintiff remained home to raise the parties' children. Plaintiff has a bachelor's degree that she claims is unmarketable, and, as of the date of trial, she had enrolled in a nursing program and plans on looking for a job once she obtains her degree.[1]

As for "the parties' past relations and conduct," plaintiff testified to defendant's abuse, which he denied. For his part, defendant testified to plaintiff's financial irresponsibility and refusal to help in rectifying the situation by finding adequate employment. The court attributed no fault to either party. While plaintiff contests the court's finding of "no fault" on appeal, this, again, was a credibility determination, and given the contradictory evidence contained in the record, we defer to that finding. *Richards*, 310 Mich App at 694.

Defendant was awarded the marital home valued at $175,000, the empty lot valued at $8,000, his *Lesko*[2] benefits worth $9,320.05, a car and motorcycle, both in inoperable condition, and various items of personal property. Defendant was also held responsible for the entire

---

[1] Defendant alleged in a post-trial motion that plaintiff is making $30 an hour as a full-time nurse.

[2] *Lesko v Lesko*, 184 Mich App 395, 402; 457 NW2d 695 (1990), overruled on other grounds by *Booth v Booth*, 194 Mich App 284, 291; 486 NW2d 116 (1992) (finding that "banked leave days are a divisible marital asset").

amount due on two mortgages on the home, totaling $169,402,[3] and the entire amount of remaining credit-card debt, totaling $18,202.38.[4] Plaintiff was awarded a vehicle valued at approximately $14,500 and the remaining personal property. In making its distribution, the court specifically referred to defendant's payments during the divorce proceedings to bring the mortgage payments and taxes on the marital home current and avoid foreclosure. Regarding plaintiff's student-loan debt, the court noted that it was "attributing [the debt] to her."

Defendant's total distribution resulted in a negative net value. Plaintiff's awarded net value, on the other hand, was nearly $15,000 because she received a valuable asset, but was not ordered responsible for any marital debt. Given these circumstances, we are not "left with the firm conviction that the division was inequitable." *Sparks*, 440 Mich at 152.

Plaintiff also argues that the trial court abused its discretion by awarding spousal support of $800 a month for a total of eight months, beginning in February 2015.[5]

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). In making this determination, the trial court should consider the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

A review of the record shows that the trial court did consider the relevant factors. Again, the court found that neither party was at fault. Further, the court acknowledged that plaintiff removed herself from the workforce to raise the parties' children and could not at the time of the divorce work full-time until at least June 2015, when she expected to graduate from her nursing program. These factors mitigate in plaintiff's favor. However, the court reasonably weighed those factors against other relevant factors. For example, the trial court's decision relieved plaintiff of all marital debt, which became defendant's sole responsibility. Plaintiff had also

---

[3] Defendant testified that the first mortgage has a remaining balance of $138,674.04 and the second mortgage has a remaining balance of $30,727.96.

[4] Defendant testified that he owes $7,668.39 on his Discover credit card, $4,657.98 on his First Source Capital One credit card, and $5,876.01 on his Lake Trust line of credit.

[5] She had previously received $1,229 a month, beginning in October 2013.

been receiving $1,229 a month in support since October 2013, during the pendency of the proceedings, and would continue to receive support thereafter while she was finishing her degree and for three months thereafter, the latter allowing her time to procure gainful employment. With this transitional support, plaintiff's needs were considered in light of defendant's financial burdens. Given that the trial court gave a reasoned analysis for its decision, taking into account that plaintiff's nursing degree would make her "marketable," we cannot find inequity such that reversal is warranted.[6]

Finally, plaintiff argues that the trial court clearly erred by imputing income to her to calculate the child-support order.

When determining a child-support award, the court must first determine each parent's net income. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). "A trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn." *Id*. at 286-287. The court's decision to impute income to a party must be "supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id*. at 285. The court must consider the following factors:

(a) Prior employment experience and history, including reasons for any termination or changes in employment.

(b) Educational level and any special skills or training.

(c) Physical and mental disabilities that may affect a parent's ability to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographical area.

(f) The prevailing wage rates in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status and present means of support.

---

[6] We also note that plaintiff testified at trial about her expenses in supporting her adult children, but financial assistance to such children is not to be considered in determining spousal support. See *Lesko*, 184 Mich App at 405.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification.  [2013 MCSF 2.01(G)(2).]

The court noted that while plaintiff is enrolled in nursing school, "it would really be almost impractical for her to have any sort of job other than . . . a minimum wage, part-time job." Impliedly, the court found that plaintiff had an unexercised ability to earn what was practical, i.e., a part-time minimum-wage income.  It also acknowledged plaintiff's availability to work by finding that only a part-time, minimum-wage job was practical, given her school schedule. Further, the court stated that both parties were healthy and able to work.

Plaintiff challenges the court's finding that she was available to work twenty hours a week.  She argues that her nursing-school program precluded her from seeking employment, asserting that her schedule required her attention "six days a week for at least eight hours each day."  She testified about further obligations in the program.  The trial court considered plaintiff's testimony when it found that it was impractical for plaintiff to work more than part-time.

Clearly, plaintiff had a demanding schedule.  However, her schedule was not such that she would have no time to hold a part-time job.  The issue of childcare could be a complication, but would be mitigated at least somewhat by the fact that the minor child is 16 years old.  The trial court's factual finding on the matter was not clearly erroneous.

Plaintiff also argues that there was no evidence presented regarding several of the relevant factors that need to be considered to impute income.  However, defendant is correct that these factors, such as availability of work in the area and ability to earn the imputed level of income, were either not relevant or impliedly considered, because plaintiff testified that she would be qualified to work several common, minimum-wage positions—the same type of work imputed to her.  While plaintiff testified that she tried to obtain employment at least once during the marriage, she acknowledged that the sought jobs required a relevant degree, which she lacked.

The court's factual findings were not clearly erroneous.  The court did not impute the amount of income that a full-time job would generate.  It did not impute the expected income of a college graduate.  Instead, it considered plaintiff's nursing-school commitment and imputed income available from a minimum-wage, part-time position.  Reversal is unwarranted.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens

-7-