*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ANDREA ROSE MULDOWNEY,

        Plaintiff-Appellee,

v

PHILLIP KERRY MULDOWNEY,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
11:45 AM

No.  367737
Livingston Circuit Court
Family Division
LC No.  2021-056034-DM

---

Before:  KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Defendant, Phillip Kerry Muldowney, appeals by right the trial court's judgment of divorce.  We affirm in part, vacate in part, and remand this case for further proceedings.

## I.  BACKGROUND

Defendant married plaintiff, Andrea Rose Muldowney, in 2010, and plaintiff filed for divorce in 2021.  The parties have three minor children but were able to reach an agreement regarding custody, parenting time, and child support.  They engaged in a highly acrimonious dispute and lengthy bench trial, however, regarding the division of their assets and defendant's request for spousal support.[1]  Among the disputed assets was an individual retirement account (IRA) held by defendant.  The IRA had originally been a 401(k) at defendant's former employer but was rolled over into an IRA when defendant changed jobs and started working for another company in 2016.  The trial court awarded defendant the value of the account as of the time of marriage but split the remaining money in the account equally between the parties.  The trial court also, as relevant here, denied defendant's request for spousal support, divided the parties' personal property by allowing each party to keep what was in their respective possession at the time of the

---

[1] Plaintiff did not request spousal support.

court's decision, and divided the proceeds from the sale of the marital home by first distributing a certain portion to plaintiff and then evenly splitting the remaining proceeds between the parties.

On appeal, defendant contends that the trial court reversibly erred by: (1) awarding plaintiff various "setoffs" before splitting the home-sale proceeds, (2) failing to award him money and specific items in connection with the parties' dispute over personal property, (3) failing to divide his IRA such that he received the value of a premarital-pension buyout and the full appreciation of the premarital portion of the account, and (4) denying his request for spousal support.

## II. STANDARDS OF REVIEW

As summarized in *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014):

> In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property. Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. Special deference is afforded to a trial court's factual findings that are based on witness credibility. This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable. [Quotation marks and citations omitted.]

Questions of law are reviewed de novo. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010).

"The same review standard applicable to the division of marital property applies to awards of spousal support." *Berger v Berger*, 277 Mich App 700, 727; 747 NW2d 336 (2008). Accordingly, the trial court's decision is reviewed "for an abuse of discretion," and its "findings of fact . . . are reviewed for clear error." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). "If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Berger*, 277 Mich App at 727. "The trial court's dispositional ruling must be affirmed unless the appellate court is firmly convinced that it was inequitable." *Id*.

## III. DISTRIBUTION OF ASSETS

We turn first to defendant's challenges to various aspects of the trial court's distribution of the parties' assets. "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Id*. at 716-717. "A division of property in a divorce action need not be equal, but it must be equitable." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994).

When dividing property in a divorce, trial courts "must first determine marital and separate assets." *Skelly v Skelly*, 286 Mich App 578, 582; 780 NW2d 368 (2009). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201. "The categorization of property as marital or separate, however, is not always easily achieved," *id*., and

ultimately, "[t]he actions and course of conduct taken by the parties are the clearest indicia of whether the property is treated or considered as marital, rather than separate, property," *id*. at 209. "As a general principle, when the marital estate is divided 'each party takes away from the marriage that party's own separate estate with no invasion by the other party.'" *Id*. at 201, quoting *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997). "However, a spouse's separate estate can be opened for redistribution when one of two statutorily created exceptions is met"— namely, "when one party demonstrates additional need," or "[w]hen one significantly assists in the acquisition or growth of a spouse's separate asset[.]" *Reeves*, 226 Mich App at 494-495 (citations omitted); see also MCL 552.23 and MCL 552.401.

## A. PROCEEDS FROM SALE OF MARITAL HOME

Defendant argues that the trial court reversibly erred by awarding plaintiff, through various "setoffs," approximately $28,000 of the $266,0000 received from the marital home's sale before dividing the remaining proceeds evenly between the parties. We disagree.

To start, the trial court awarded plaintiff $6,924.50 out of the proceeds as reimbursement for sale-preparation activities. Defendant contends that this was improper because plaintiff was not actually intending to sell the home but wanted to live there, and thus she spent the money merely for her own benefit. He also contends that no cleaning of the home or other sale-preparation activities were needed. But the record provides support for the court's decision. Plaintiff testified that she expended money and time in order to make the home presentable for sale. She also testified that the court-appointed realtor had told her that cleaning would need to take place for the sale, and the realtor confirmed in his testimony that the home was "in better shape to list" for sale afterwards. While defendant disputes this evidence, our review is for clear error in the court's findings, with special deference to its credibility determinations. See *Hodge*, 303 Mich App at 554-555. Defendant's arguments and the record before us do not leave us with a definite and firm conviction that the trial court made a mistake in distributing this amount to plaintiff, or that the distribution was inequitable. See *id*.

Similarly, defendant challenges the court's award to plaintiff of $15,000 to equalize a withdrawal made by defendant from an E*TRADE account, and $3,293 to equalize an income-tax payment plaintiff had made. But these decisions also find support in the record. Defendant admitted to withdrawing approximately $30,000 from the E*TRADE account, which held joint funds. And there was trial testimony about a $6,586 charge on plaintiff's credit card for a 2020 joint tax bill. Defendant contends that he should not have to pay anything toward this 2020 tax bill because plaintiff unilaterally decided to file separately for the following year (i.e., 2021), which resulted in him having a tax bill for 2021 while plaintiff did not. But plaintiff stated that she could not file taxes jointly for 2021 because defendant would not give her the required information. Again, defendant may disagree with the court's ultimate assessment of the testimony and evidence on these points, but he has failed to show any reversible error as to it. See *id*.

The same holds true for defendant's other arguments on this topic. The court awarded plaintiff $2,500 "for the closing concession that was made to the buyers of the home for [the] air compressor that the Defendant sold from the home." Defendant admitted to selling the air compressor, and he does not dispute the existence of the closing concession. He complains that plaintiff was allowed to undertake the closing transactions on her own, but the record reflects that

this was because the parties had been so acrimonious over the sale of the home. Defendant also complains that he was not allowed to obtain a hot tub from the home, which resulted in the buyers of the home receiving it even though it was not part of the purchase agreement. The record shows, however, that defendant did have a chance to remove personal property from the home. Defendant provides no record support for his assertion that he was not allowed to retrieve the tub, and there is nothing to indicate that it factored into the court's home-proceeds award at any rate. As above, under the standards that control our review, defendant has shown no entitlement to relief on these points. See *id*.

## B. PERSONAL PROPERTY

Defendant also challenges the trial court's decision that each party would retain the personal property currently in his or her possession. He contends that he was owed items and money for possessions plaintiff removed from the home. According to defendant, the items plaintiff removed from the home had an "agreed upon" value of approximately $60,000, and he was entitled to $28,000 of that. Plaintiff, however, did not testify or otherwise agree that she had removed $60,000 of the parties' personal property and kept it for herself; rather, she estimated that the total value of the parties' personal property was possibly $60,000. The parties provided lengthy and competing testimony about what items this property comprised, what those various items were worth, and who had—and who should have—which items as their own. Ultimately, the court concluded that "the most equitable[,] just[,] and reasonable thing to do here based on the evidence" was to allow each party to keep the property that they each currently had. Defendant has failed to show that this resolution of the dispute was grounded upon a legal or clear factual error, nor are we definitely and firmly convinced that it was inequitable. See *id*.

## C. DEFENDANT'S IRA

Defendant's final challenge to the court's distribution of the parties' assets concerns his IRA and to what extent it should be treated, and divided, as part of the marital estate. The IRA, in one form or another, was in existence at the time the parties married in 2010, and also had contributions made to it during the marriage. As noted, the court awarded defendant, as his separate premarital property, the value of the IRA on the date of the parties' marriage, and then split the remaining balance of the account equally between the parties. Defendant contends that the court erred by including in that equally divided balance (1) the amount in the IRA attributable to defendant's pension buyout, which he received during the marriage but which consisted entirely of money earned and accrued prior to the marriage; and (2) the amount in the IRA attributable to the appreciation of his premarital property, which his expert witness was able to trace and identify according to a methodology previously used by plaintiff's own expert and approved in *Robach v Robach*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2021 (Docket No. 352077).

On the record before us, we see some conceivable merit in these arguments, but the trial court's findings are insufficient to permit due appellate review of them. As to the pension buyout, defendant testified that his former employer canceled its pension program before the marriage but that, when he left the company during the marriage, he was given a pension buyout of approximately $49,000 for the earned pension from 1996 to 2006—an entirely premarital period—

-4-

and he rolled that into the IRA. Nothing was seemingly offered to refute this testimony. In its findings, the trial court did not address the pension buyout or explain why it may be properly subject to division between the parties. Given these circumstances, a remand for the court to specifically address the matter—and to conduct whatever further proceedings may be necessary for it to properly do so—is appropriate. See, e.g., *Booth v Booth*, 194 Mich App 284, 289-291; 486 NW2d 116 (1992).

We also conclude that remand is appropriate regarding how to characterize and distribute the appreciation of defendant's IRA that occurred during the parties' marriage. As our Supreme Court has recognized, "in certain situations, a spouse's separate assets, or the appreciation in their value during the marriage, may be included in the marital estate." *Dart v Dart*, 460 Mich 573, 585 n 6; 597 NW2d 82 (1999). In *Hanaway v Hanaway*, 208 Mich App 278, 293-295; 527 NW2d 792 (1995), for instance, this Court concluded that "the asset at issue"—the defendant's interest in a family-owned company gifted to him by his father—should not be treated as his "sole and separate property" because, during the marriage, it "did not increase in value simply by earning interest," but instead "it appreciated because of [the] defendant's efforts, facilitated by [the] plaintiff's activities at home." By contrast, in *Reeves*, 226 Mich App at 496-497, this Court concluded that the parties' marital estate should not include the appreciation during the marriage of the defendant's premarital interest in certain property, given that his interest "was wholly passive at all times" and could not be said to have "appreciated because of [his] efforts, facilitated by [the] plaintiff's activities at home." (Quotation marks and citation omitted.)

As to the appreciation of retirement funds in particular, this Court, in *McNamara v Horner*, 249 Mich App 177, 184-185; 642 NW2d 385 (2002), concluded that the "entire appreciation" of the parties' premarital retirement funds during the marriage "should be included in the marital estate[.]" This Court reasoned that the parties continued to make contributions into the funds during the marriage, those marital contributions "were commingled with funds each party contributed before marriage," and "because of the parties' commingling of premarital and marital assets, it is not possible to accurately determine the premarital appreciation of these assets." *Id*. Subsequently, in *Robach*, unpub op at 5-6, a panel of this Court found no error in the trial court awarding to the defendant alone the portion of the defendant's retirement account that was attributable to the appreciation of his premarital interest in the account, even though that appreciation occurred during the marriage. The panel explained that,

> unlike the situation in *McNamara*, 249 Mich App at 184, where it was "not possible to accurately determine the premarital appreciation of these assets," [the defendant's expert] testified that he was able to accurately determine the premarital appreciation of the portion of [the] defendant's 401(k) account value that existed before the parties married, and his report contained a detailed breakdown of the pertinent information. [*Robach*, unpub op at 6.]

Here, *Robach* and *McNamara* featured heavily in the parties' presentation of this issue to the trial court. Plaintiff argued that, under *McNamara*, the entire appreciation of defendant's IRA during the marriage should be included in the marital estate; defendant, meanwhile, relied on *Robach* to argue that the portion of the appreciation attributable to the premarital value of the account should be excluded from the marital estate. Both parties presented expert testimony. Defendant's expert testified that he, using the same methodology of the expert in *Robach*, had been

able to determine what portion of the appreciation of defendant's IRA during the marriage was attributable to the premarital value of the account. Plaintiff's expert was the very same expert in *Robach*; he testified that he reviewed the report of defendant's expert, confirmed that the expert had used the same methodology that he himself had used in *Robach*, and stated that he could not "agree or disagree" with the analysis of defendant's expert in this case because he did not have certain "statements . . . that [defendant's expert] did have" in preparing the analysis.

Ultimately, the trial court concluded the entire appreciation of the IRA during the marriage should be split between the parties as part of the marital estate, explaining that "there was a com[m]ingling of this asset during the marriage," that "the Court accepts the testimony of [plaintiff's expert] in that this appreciation was unable to be traced" to the premarital portion of the account, that plaintiff's expert was significantly more experienced and qualified than defendant's expert, and that "the Court is hesitant to place further credibility with regards to [defendant's expert's] supposed calculation in that statements had to be provided, information had to be recreated[.]"

We see no clear error in the trial court's assessment of the experts' respective experience and qualifications, or in its conclusion that premarital and marital funds were commingled in defendant's IRA. It appears, however, that the court may have misconstrued the testimony of plaintiff's expert regarding the ability to trace what amount of the account's appreciation during the marriage was attributable to the premarital portion of the account. As noted, plaintiff's expert did not state that the amount "was unable to be traced," nor did he opine that the methodology used in *Robach* could not also be used in this case. Instead, he testified that he could not "agree or disagree" with the tracing analysis that defendant's expert had performed in this case because he could not verify all of the information on which that analysis relied. The record before us indicates that this was not because defendant's expert had failed to include or substantively account for that information in his analysis, but instead because the information had been inadvertently "chopped off" of the printed version of that analysis that plaintiff's expert had reviewed. Thus, while plaintiff's expert could not himself fully vet the substantive analysis of defendant's expert, there was also no testimony or evidence offered to directly impugn its accuracy.

In its findings, the trial court called into question the accuracy of that analysis, and the credibility of defendant's expert more generally, based on the expert's reliance on "recreated" information. Defendant's expert testified that, initially, he had received incomplete information from one of the financial institutions associated with the account, which required him to order that information from the institution. The expert repeatedly confirmed that any such gaps in information had been rectified, his analysis accounted for "all the data" that it should, and he was "a hundred percent certain that the numbers we did are completely accurate." While, in response to the court's questioning, the expert also confirmed that he could not himself vouch for the accuracy of the underlying information provided by the financial institution, the record reflects no challenge to that effect or any particular basis to doubt the completeness or accuracy of the ultimate universe of information provided to and used by defendant's expert.

Accordingly, the record before us indicates that clear error may have tainted the trial court's findings on the matter of appreciation. This is not to say, however, that the court necessarily reached the wrong result. As discussed, our caselaw reflects numerous considerations that may inform whether and to what extent the appreciation of defendant's IRA during the parties' marriage

should be treated as part of the marital estate—and simply because the panel in *Robach* found no error in the trial court's approval of a certain methodology for distribution in that case does not mean that the same methodology and outcome must or should apply here. Given our concerns regarding certain of the trial court's stated findings, however, we conclude that remand is appropriate for the court to reconsider the matter and to conduct whatever further proceedings may be necessary for it to properly do so.

In sum, we vacate the portion of the trial court's ruling regarding the distribution of defendant's IRA and remand for further proceedings on that matter. We otherwise reject defendant's challenges to the trial court's distribution of the parties' assets.

## IV. SPOUSAL SUPPORT

Lastly, defendant contends that the trial court abused its discretion by not awarding him spousal support. We disagree.

MCL 552.23(1) states:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

As this Court has explained:

> The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case. Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356 (citations omitted).]

The trial court in this case correctly recognized these governing standards, and we see no reversible error in the court's application of them to defendant's request for spousal support. As the court explained, the parties had been married for about 13 years, are of similar ages, are both educated, both "have the ability to work" and "are in good health," both "have . . . high-earning good jobs that are relatively close in . . . [pay] range," both have "moved up in their careers," and both "have . . . moved into new homes that they can both support themselves in and the minor

children[.]" The record supports these findings. Defendant takes issue with the court's assessment of the parties' respective incomes, stressing that plaintiff earned more than he did and had started a new job that would result in an even higher income. The court did not find, however, that both parties earned or would continue to earn the same amount as one another—just that there was nothing in any disparity between their current or future incomes or earning capacities that would support awarding defendant spousal support. We are not left firmly convinced that this determination was erroneous or inequitable. See *id*. at 355; *Berger*, 277 Mich App at 727.

Similarly, defendant maintains that the court failed to account for the issue of fault, as well as the fact that he had taken a backseat in his career so that plaintiff could advance hers. In her testimony, however, plaintiff disputed defendant's accusations of fault and his claim about deprioritizing his own career, and defendant himself admitted below that both parties shared fault for dissolution of the marriage. As to these points as well, defendant has failed to show any reversible error in the trial court's assessment of the record and ensuing denial of this request for spousal support. See *id*. at 355; *Berger*, 277 Mich App at 727.[2]

## V. CONCLUSION

For the reasons set forth above, we vacate the trial court's ruling with respect to the distribution of defendant's IRA and remand for further proceedings on that matter consistent with this opinion. In all other respects, we affirm. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

---

[2] Defendant also notes that the trial court observed in its findings that both parties were "getting what the Court deems an equal award of the marital assets"—but that, per his other claims on appeal, he did not in fact receive an equal or equitable amount of those assets. As discussed, many of defendant's claims to that effect lack merit, and while one of them requires remand, we do not see how its resolution below might meaningfully undermine the ultimate propriety of the court's denial of defendant's request for spousal support.