*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROY F. ELTURK,

        Plaintiff-Appellant,

v

SARAH E. ELTURK,

        Defendant-Appellee.

UNPUBLISHED
June 15, 2026
1:16 PM

No. 373634
Oakland Circuit Court
LC No. 2022-517249-DM

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right from a judgment of divorce that: (1) divided the marital estate; and (2) awarded defendant $2,747 in monthly spousal support for 66 months. We vacate the award of interest, reverse the award of dissipated assets, but otherwise affirm the trial court's challenged rulings and judgment.

## I. BACKGROUND

At trial, the following facts were found by the trial court. In October 2009, when the parties became legally married, both worked full-time. The parties had four children during the marriage. After the birth of the parties' first child, defendant no longer worked outside the home. Defendant managed the household and most of the parties' finances, while plaintiff worked and earned a significant income as a dentist. The parties' marriage deteriorated, with each blaming the other for the breakdown in the marital relationship. In the fall of 2022, plaintiff moved out of the marital home and into a rented home.

In December 2022, plaintiff filed for divorce. Shortly thereafter, the trial court entered a mutual restraining order concerning the parties' finances, which was intended to maintain the parties' fiscal status quo. During the divorce proceedings, defendant obtained part-time employment. Because the parties continued to argue about finances, the trial court entered another order concerning the parties' finances in October 2023. Although plaintiff wanted to sell the marital home, defendant wanted to retain it. In the weeks leading up to trial, the kitchen of the marital home was demolished during a continued renovation. Defendant borrowed money from her parents to pay for the construction costs, which exceeded $40,000.

The bench trial lasted several days, ending on March 1, 2024. The parties testified at length in their cases-in-chief. Plaintiff accused defendant of verbal abuse, and called contractor Robert Herrgott, who viewed the marital home in May 2023. Herrgott opined that he could prepare the marital home for sale for $47,760, but also acknowledged the estimate would change if additional construction was performed. Defendant accused plaintiff of three extramarital affairs and of dissipating more than $180,000 in marital assets between January 1, 2018 and July 24, 2023. Defendant called expert witness Louise Braun, who completed three appraisals of the marital home during the proceedings. Defendant requested the trial court consider Braun's January 2024 appraisal because it was the most recent and relevant. Defendant also requested spousal support, interest on certain property awards, reimbursement for the marital assets allegedly dissipated by plaintiff, and that she be awarded the marital home. Plaintiff essentially requested the opposite, including that the trial court impute income to defendant.

The trial court issued a detailed written opinion, and motions for clarification followed. After holding a hearing to resolve outstanding issues, the trial court entered the judgment of divorce, which incorporated the written opinion, as well as opinions concerning the motions for clarification. In relevant part, the trial court found the value of the marital home was $245,000 and awarded it to defendant, with orders to pay plaintiff his portion of the equity. After concluding plaintiff was at fault for the breakdown of the marriage, the trial court also awarded defendant (1) $91,931.50 for her share of the marital funds it found plaintiff dissipated; (2) 5% interest on certain property awards, including her 60% share in plaintiff's business interests; and (3) $2,747 in monthly spousal support for 66 months. This appeal followed.

## II. DIVISION OF THE MARITAL ESTATE

Plaintiff asserts several errors were made by the trial court when it divided the marital estate. We consider the arguments in turn.

## A. STANDARDS OF REVIEW

"In a divorce action, we review for clear error a trial court's factual findings related to the division of marital property." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "[A] trial court's findings of fact regarding whether a particular asset qualifies as marital or separate property" are also reviewed for clear error. *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). Questions of law are reviewed de novo. *Cunningham*, 289 Mich App at 200.

An award of interest in equity lies in the sound discretion of the trial court. *Reigle v Reigle*, 189 Mich App 386, 393-394; 474 NW2d 297 (1991). The valuation date of marital property is also reviewed for an abuse of discretion. *Thompson v Thompson*, 189 Mich App 197, 199; 472 NW2d 51 (1991). This Court also "review[s] for an abuse of discretion a trial court's decision to admit or exclude evidence, but preliminary legal questions regarding the admissibility of evidence are reviewed de novo." *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). In the evidentiary context, "[a]n abuse of discretion occurs when the result falls outside the range of principled outcomes." *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015).

B. ANALYSIS

The purpose of a divorce judgment is to fix the property rights and interests of the parties. *Westgate v Westgate*, 291 Mich 18, 28; 288 NW 860 (1939). "A judgment of divorce . . . must include . . . a determination of the property rights of the parties[.]" MCR 3.211(B)(3). "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). When dividing the marital estate,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

"The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008) (quotation marks and citation omitted). "The trial court is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations." *Sparks*, 440 Mich at 158-159. "A division of property in a divorce action need not be equal, but it must be equitable." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). "[A]ny significant departure from congruence must be clearly explained by the trial court." *Gates*, 256 Mich App at 423.

In reaching an equitable division, the trial court first determined what property was marital property and what was separate property. See *Cunningham*, 289 Mich App at 200, and *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). Neither party challenges the trial court's conclusion on what constituted marital property.

1. THE MARITAL HOME

Plaintiff argues that the trial court erred in several ways when valuing the marital home at $245,000. "[I]t is settled law that trial courts are required by [MCR 3.211(B)] to include a determination of the property rights of the parties in the judgment of divorce." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). The valuation of property can be based on (1) expert testimony; (2) lay testimony; (3) the parties' testimony; or (4) testimony of an independent expert appointed by the trial court "to provide it with a perhaps more objective valuation." *Id*. at 627 n 4. The trial court must "value the asset as of either the date of trial, the date of judgment, or a more appropriate date." *Byington v Byington*, 224 Mich App 103, 114 n 4; 568 NW2d 141 (1997). "[I]n determining the valuation date, the [trial] court must and does retain considerable discretion to see that equity is done, thereby limiting to whatever extent feasible any artificial impetus to file for, delay, hasten, or finalize a divorce." *Id*. (citation omitted). See also *Gates*, 256 Mich App at 427.

As the trial court stated in its opinion, plaintiff wanted to sell the marital home, which had been under construction for years, and divide the proceeds of the sale with defendant. In contrast, defendant wanted to retain the marital home and pay plaintiff for his portion of the equity. The trial court ultimately held the value of the marital home was $245,000 and awarded it to defendant, with plaintiff to be paid his portion of the equity. Why the trial court valued the marital home at $245,000, which was $9,500 less than Braun's January 2024 appraisal, is not particularly clear. Nonetheless, the trial court stated it considered Braun's testimony and her January 2024 appraisal because it was the most relevant evidence of value, and considered "other factors" and Braun's other two appraisals, which were completed in March 2023 and June 2023. In doing so, the trial court properly chose a value within the range established by the proofs, as the valuations offered by the parties ranged from $200,548.11 to $345,000, depending on the costs to make the house ready for sale. Cf. *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994) ("where a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present").

We disagree with plaintiff's argument that the trial court improperly relied on outdated appraisals. While there was a delay between the last day of trial and the issuance of the September 2024 opinion, in its October 3, 2024 order the trial court gave the parties the opportunity to submit updated appraisals before it entered the November 2024 judgment of divorce. The parties did not provide updated appraisals, leaving the January 2024 appraisal as the most recent. Thus, the trial court attempted to use the most appropriate information available to it when placing a value on the marital home. It was not until the trial court valued the marital home at $245,000, and ordered defendant to pay plaintiff for his portion of the equity, that plaintiff decided it was imperative for the trial court to have rendered a decision using updated information. But "a litigant should not be the beneficiary of his own questionable acts or inaction," see *Curylo v Curylo*, 104 Mich App 340, 346-347; 304 NW2d 575 (1981), and here it cannot be said that the trial court abused its discretion by failing to use an updated appraisal, when the parties failed to provide one. To the extent the trial court relied on the January 2024 appraisal, the trial court had a plausible reason for doing so. See, e.g., *Thompson v Thompson*, 189 Mich App 197, 199; 472 NW2d 51 (1991).

Plaintiff's argument that the trial court improperly relied on hearsay when using the January 2024 appraisal was waived. Braun's appraisals were contained in defendant's Exhibit DD, and when defendant moved to admit the exhibit into evidence, plaintiff responded: "No objection."[1] By affirmatively stating he had no objection to admission of Exhibit DD, which expressly incorporated contractor Charles Pawluk's construction estimate, plaintiff knowingly and voluntarily relinquished the right to oppose the admission of the evidence. See *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011). The issue is waived and will not be considered because "[a] party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014) (quotation marks and citation omitted). See also *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001).

---

[1] Plaintiff's citations to the record do not support an argument that this issue was preserved.

## 2. DISSIPATION OF MARITAL ASSETS

Plaintiff next argues that the trial court clearly erred when finding that he dissipated $183,863 in marital assets. We agree the trial court clearly erred in this regard. "[W]hen a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate." *Woodington*, 288 Mich App at 368. In determining whether marital assets were dissipated, it is proper to consider the parties' normal spending patterns. See *Elahham v Al-Jabban*, 319 Mich App 112, 124; 899 NW2d 768 (2017).

It is undisputed that the $183,863 was marital because the funds originated from plaintiff's income while the parties were married. See *Cunningham*, 289 Mich App at 201. At the time of trial, the funds were no longer in plaintiff's possession because he spent the money. However, the trial court did not make findings that plaintiff "spen[t] or use[d] up [the funds] wastefully or foolishly." See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "dissipate"). See also *Random House Webster's College Dictionary* (1997) (defining "dissipate"). Notably, there was no dispute plaintiff sufficiently provided for defendant and the children at all times.[2] Plaintiff also purchased vinyl records to add to his collection with at least some of the funds from the cashed checks, and defendant received $22,500 for her share of the record collection.

While plaintiff also spent the money on food and entertainment, defendant testified plaintiff routinely went out to dinner and to social events during the marriage, while defendant stayed home with the children. Additionally, while it was a point of contention in the parties' marriage, it was also typical for plaintiff to give money to family members with no expectation of repayment. Defendant testified, if she suggested plaintiff cut back on his spending, plaintiff would state he "makes enough money," and he could "spend it on what he wants." Spending money on food, vinyl records, and entertainment was part of plaintiff's normal spending pattern, and was not evidence of an attempt to dissipate the assets of the marriage. See *Elahham*, 319 Mich App at 124 ("Plaintiff fails to establish that these amounts stemmed from defendant's dissipation of marital assets, rather than from defendant's ordinary business expenses and income."). Plaintiff's expenditures on these and similar matters were the status quo in the marriage. And there was no finding that plaintiff used the funds "for personal benefit when a divorce [was] imminent." See *Black's Law Dictionary* (9th ed) (defining "dissipation").

Additionally, the challenged spending occurred between January 1, 2018 and July 24, 2023, and the evidence showed that both parties considered the marriage to be in serious trouble in 2022, not 2018. Plaintiff filed for divorce in December 2022, and defendant testified that in November 2022, she realized the marriage was over. Before then, defendant wanted to repair the marriage for the sake of the children. Additionally, the challenged spending that occurred after December 2022 related to plaintiff's payment of attorney fees, which the trial court found did not constitute dissipation of marital assets. Under these facts, the trial court clearly erred when it found plaintiff dissipated $183,863 from the marital estate. We are unpersuaded by defendant's reliance

---

[2] While plaintiff retained $183,863, this was out of the more than $1.6 million plaintiff received in disbursement checks. In addition, plaintiff received a salary and bonuses.

on *Sands v Sands*, 192 Mich App 698, 703; 482 NW2d 203 (1992), and *Everett v Everett*, 195 Mich App 50, 55-56; 489 NW2d 111 (1992), to support the trial court's decision.

### 3. APPLICATION OF INTEREST

Plaintiff next challenges the trial court's decision to order plaintiff to pay interest on certain payments relating to property awards.[3] A divorce judgment is not a money judgment within the meaning of the interest statute and does not normally carry interest under MCL 600.6013(1). *Olson v Olson*, 273 Mich App 347, 349-354; 729 NW2d 908 (2006). However, the usury statute, MCL 438.31, applies to debts from one spouse to another under a divorce judgment. *Clifford v Clifford*, 434 Mich 480, 480-481; 453 NW2d 675 (1990); *Norman v Norman*, 201 Mich App 182, 189; 506 NW2d 254 (1993). MCL 438.31 fixes the lawful rate of interest between individuals at 5%, unless otherwise agreed to in writing. See MCL 438.31. Plaintiff challenges the award of interest in general, not the 5% rate.

It is within the equitable powers of the trial court to set interest in a divorce decree after it has adjudicated the rights of the parties. *Duby v Duby*, 163 Mich App 396, 399; 413 NW2d 807 (1987). See also *Olson*, 273 Mich App at 354-355. Because "interest on such awards is granted solely pursuant to the equitable powers of the court," any factor used "must be one that is fair, equitable, and just under the circumstances of the case." *Thomas v Thomas (On Remand)*, 176 Mich App 90, 92; 439 NW2d 270 (1989). The interest rate must "operate[] neither as a windfall to the recipient nor as a punitive measure against the payor." *Id*.

The trial court did not explain why it was equitable for plaintiff to pay defendant 5% interest on certain property awards. It could not have been for the traditional reasons usury statutes seek to protect, because "the protection of needy borrowers or the penalization of unconscionable moneylenders . . . is simply not relevant when the transaction at hand is a trial court's order regarding a property settlement in a divorce judgment." *Duby*, 163 Mich App at 399 (quotation marks and citation omitted).

Additionally, "[a] trial court does not compensate a party for loss in a divorce action, but rather seeks an equitable distribution of property. Accordingly, any interest award in a divorce action is not intended to serve the purpose of compensating a party for lost use of funds." *Reigle*, 189 Mich App at 394. The interest rate must "operate[] neither as a windfall to the recipient nor as a punitive measure against the payor." *Thomas*, 176 Mich App at 92. However, an award of interest can prevent "the delinquent party from realizing a windfall and assure[] prompt compliance with court orders." *Reigle*, 189 Mich App at 394. Importantly, none of plaintiff's payments were delinquent when the divorce judgment was entered. Cf. *Lawrence v Lawrence*, 150 Mich App 29, 34; 388 NW2d 291 (1986) (holding the trial court did not abuse its discretion by awarding "interest dating from the due date until the date of satisfaction," where the husband's payments were "overdue"). While show-cause proceedings against plaintiff were initiated after trial because defendant alleged plaintiff failed to comply with the October 2023 status quo order,

---

[3] Plaintiff did not waive this issue by preparing the judgment of divorce. See *Aubuchon v Farmers Ins Exch*, 448 Mich 860, 860; 528 NW2d 733 (1995); *In re Leete Estate*, 290 Mich App 647, 658; 803 NW2d 889 (2010).

the trial court did not hold plaintiff in contempt. Instead, the trial court ordered the parties to "exchange all information regarding distributions through the entry of the Judgment of Divorce," and plaintiff was ordered to "equalize any payments within 45 days of entry of the Judgment of Divorce." The trial court did not state that it was also necessary to award interest.[4] In sum, the trial court failed to make the necessary findings to support an award of interest under equity.

## 4. CONSIDERATION OF FAULT

Plaintiff next challenges the trial court's finding that plaintiff was at fault, which resulted in an award to defendant of 60% of certain marital property.

It is a well-settled principle that "[m]arital misconduct is only one factor among many and should not be dispositive. Instead, fault should be considered in conjunction with all the other relevant factors." *Cassidy v Cassidy*, 318 Mich App 463, 478; 899 NW2d 65 (2017) (quotation marks and citations omitted). Fault "is not a punitive basis for an inequitable division." *Id*. (quotation marks and citation omitted).

Contrary to plaintiff's argument, the trial court properly referenced the findings of fact it made under the property-division factors in *Sparks*, 440 Mich at 159-160, when it considered the award of spousal support. See *Moser v Moser*, 184 Mich App 111, 117; 457 NW2d 70 (1990) (stating that the factors considered for determination of an alimony award are the same as the factors considered for division of marital property). After doing so, it then considered the evidence of plaintiff's various affairs, and awarded defendant 60% of certain marital assets "due to the fault of Plaintiff." The parties agreed the trial court should consider fault, with each party requesting the trial court award him or her 60% of the marital estate. Nothing in the record shows that the trial court placed excessive weight on the factor of fault when dividing portions of the marital estate, as opposed to ensuring an equitable division of the marital estate. The trial court had already made findings under the relevant factors, referenced those findings, made a finding of fault, and came up with the ultimate division. There was no clear error.

We also disagree with plaintiff's arguments that evidence concerning his extramarital affairs was irrelevant as to fault. "[R]elevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Mich Dep't of Transp v Haggerty*

---

[4] While defendant encourages this Court to conclude that any error was harmless because the record supports awarding defendant interest, this Court is an error-correcting court. See *Apex Laboratories Int'l Inc v City of Detroit (On Remand)*, 331 Mich App 1, 10; 951 NW2d 45 (2020). Defendant essentially invites this Court to impermissibly make findings of fact and conclusions of law. "It is not the function of an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance or reversal by testing its factual conclusion against that which the trial court *might* have . . . reached." *In re Martin*, 200 Mich App 703, 717; 504 NW2d 917 (1993) (quotation marks and citation omitted; alteration in original).

*Corridor Partners Ltd Partnership*, 473 Mich 124, 138; 700 NW2d 380 (2005), citing MRE 401. Fault is a relevant consideration when dividing the marital estate. See *Zecchin v Zecchin*, 149 Mich App 723, 727; 386 NW2d 652 (1986). "In determining fault as one of the factors to be considered when fashioning property settlements, courts are to examine the conduct of the parties during the marriage." *Welling v Welling*, 233 Mich App 708, 712; 592 NW2d 822 (1999) (quotation marks and citation omitted).

Evidence of plaintiff's sexual and emotional relationship with his office manager, which began well before the divorce proceedings were initiated, was relevant to why the marital relationship broke down. Cf. *Knowles v Knowles*, 185 Mich App 497, 499-501; 462 NW2d 777 (1990). See also *Zecchin v Zecchin*, 149 Mich App 723, 727-728; 386 NW2d 652 (1986) (when considering fault, "[t]he focus must be on the conduct of the parties leading to the separation"). Additionally, we fail to see how evidence relating to plaintiff's relationships with two other women while the parties were religiously or legally married was irrelevant as to fault. Indeed, the evidence demonstrated plaintiff's pattern of infidelity, and was at least marginally relevant because it shed light on the dynamics of the parties' marriage. Without this evidence, the trial court would have to consider plaintiff's relationship with his office manager in a vacuum. The trial court, as the finder of fact, was entitled to give this relevant evidence the appropriate weight.

## III. SPOUSAL SUPPORT

Plaintiff next challenges the trial court's decision to award spousal support and the manner in which it was calculated.

## A. STANDARD OF REVIEW

We review a trial court's decision concerning spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012).

> The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case. We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [*Id*. at 25-26 (quotation marks and citations omitted).]

## B. ANALYSIS

## 1. AWARD OF SUPPORT

We reject plaintiff's argument that the trial court did not make adequate findings to support a spousal support award to defendant. As noted earlier, in its written opinion the court went over all the relevant factors, made findings on each, and then made its award. Though the court's

findings were not all wrapped together in an ending summation, the court made findings under the proper factors, and considered those in deciding whether an award was appropriate.

Plaintiff is correct that the court did not explicitly analyze the extent of the property division that defendant received, and how that impacts a need for support. But two of the main components of that argument—the $91,000 in dissipated assets and the 5% interest on certain payments under the property division—were successfully challenged, diminishing plaintiff's argument that defendant received enough through the property division such that spousal support was not necessary. The court was cognizant that much of the property awarded to defendant was not income producing assets (and one that was, the $91,000 share of dissipated assets, has been reversed in this opinion), a relevant factor in deterring the need and amount of spousal support. *Hanaway v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995). And, again, the court was aware of the findings it made, and indicated it considered those in reaching its conclusion. The award of spousal support to defendant, a stay-at-home mom for most of the roughly 15-year marriage, was not an abuse of discretion.

## 2. AMOUNT OF AWARD

In rendering the spousal support award, the trial court relied on plaintiff's stipulated annual income of $278,000, defendant's annual earnings (partially imputed) of $26,000 ($20.00 an hour for 25 hours a week), and defendant's monthly budget of approximately $5,500. Plaintiff's chief complaint is that, according to his calculations, the court erred by not including the child support defendant would be receiving from plaintiff. But there is no evidence or law supplied by plaintiff to support this argument. Plaintiff presented no statute, regulation or caselaw that requires child support payments be included as income for purposes of calculating spousal support, and we will not search for authority to support a party's argument. *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004).[5]

## IV. CONCLUSION

The trial court's award to defendant of $91,000 in dissipated assets is reversed, and the award of interest is vacated, and the remainder of the judgment is affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[5] The unpublished opinion cited in plaintiff's reply brief does not state that the law requires child support be added to the income of the parent receiving that support to care for the children. Instead, it merely held that because the trial court did not impute the child support award to the plaintiff's income, it should not have also considered the expenses attributable to the children for purposes of determining an appropriate amount of spousal support.